Kira Howell
Kira.howell8@yahoo.com

████████████

Plaintiff in Pro Per

KAREN J. PAZZANI (State Bar No. 252133)
kpazzani@psemploymentlaw.com
PUNEET K. SANDHU (State Bar No. 254726)
psandhu@psemploymentlaw.com
JOSEPH V. MARRA III (State Bar No. 238181)
jmarra@psemploymentlaw.com
PAZZANI & SANDHU LLP
700 North Central Avenue, Suite 460
Glendale, California 91203
Telephone: (213) 362-1860
Facsimile: (213) 362-1861

Attorneys for Defendant
PEPPERDINE UNIVERSITY

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIRA HOWELL,<br><br>                    Plaintiff,<br><br>        v.<br><br>PEPPERDINE UNIVERSITY,<br><br>                    Defendant. | Case No.: 2:24-CV-06332-WLH-RAO<br><br>**JOINT RULE 26(f) REPORT**<br><br>**Conference Date:** December 13, 2024<br><br>**Original Complaint:** July 26, 2024<br><br>**Responsive Pleading:** October 29, 2024<br><br>**(Proposed) Trial Date:** January 5, 2026<br><br>**Judge:** Hon. Wesley L. Hsu |

1

PARTIES' JOINT RULE 26(f) REPORT

Plaintiff Kira Howell ("Plaintiff") and Defendant Pepperdine University ("Defendant") (hereby referred to collectively as "the Parties") submit the following Joint Report regarding the results of their conference:

## FEDERAL RULE OF CIVIL PROCEDURE RULE 26(f) REPORT

### 1. Statement of the Case

A. Plaintiff's Position

Plaintiff contends that Defendant violated Title IX, the Cal. Educ. Code § 66270, and state civil rights statutes when it retaliated against her by restricting her from her education twenty-four hours after she emailed faculty member Barry McDonald on February 5, 2024 requesting he refrain from harassing her during class, including making disparaging sex-based comments towards her and making sexual gestures as she sat in her seat. Prior to this email, Plaintiff endured months of targeted discrimination from other faculty members and students centered on her age, sex, perceived sexual orientation, and perceived medical history beginning with faculty members and Deans inquiring about her sexual orientation, public references to guns along with offensive gestures, assaults in association with offensive references, stalking around campus, three instances of misdemeanor vandalism of personal property (September 14, 2023, September 26, 2023, and November 9, 2023), and numerous unsolicited comments about her body habitus and other unwanted sex-based comments and acts.

Reports to the Defendant occurred when Plaintiff reported to the Department of Public Safety threatening behavior and Stipanowich's harassment in class (August 30, 2023), she reported to Defendant vandalism to her property and opposed Career Development Office Director Alexis Joyce's discriminatory behaviors (September 26, 2023), she reported to Defendant serial book defacements and chronic homophobic

references, as well as Stipanowich's sex-based harassment (October 17, 2023), and when she reported McDonald's sex-based harassment and discrimination (February 5, 2024).

Plaintiff endured constant antagonizing and intimidation from Defendant upon reporting sexual harassment, violent gestures, and serial misdemeanor book defacements. Plaintiff was not permitted to lawfully oppose discrimination by telling the offending Defendant employee or student to stop or leave her alone, and ultimately the Defendant punished her by denying her equal access to her education for exercising her statutory rights under Title IX and the Cal. Educ. Code. In an email to Defendant on February 13, 2023, Plaintiff stated there was no factual basis for restricting her education and she cited clear discriminatory intent. In its February 14, 2024 response, Defendant offered no facts or defense against retaliation. The Defendant acted with deliberate indifference to pervasive sex-based discrimination by refusing to initiate proper Title IX support and protections regarding discrimination from faculty members, and it retaliated against her unlawfully when she refused to stop opposing it as it continued to occur across multiple semesters.  Plaintiff sued in District Court on July 26, 2024.

B. <u>Defendant's Position</u>

Plaintiff Kira Howell was enrolled as a law student at Defendant Pepperdine University's Caruso School of Law ("CSOL") from summer 2023 to spring 2024.  During that time, she exhibited erratic behavior towards her classmates and the CSOL faculty, leading many to believe that Plaintiff suffered from serious mental health problems and delusions. Plaintiff falsely accused several professors, staff and students of serious misconduct that simply never occurred.  Plaintiff was never able to provide any supporting witnesses or documentation to substantiate her claims (despite many of the alleged events occurring in front of dozens of students), and Plaintiff repeatedly rebuffed all outreach from Defendant for mental health care or counseling.

By February 2024, Plaintiff's false accusations and erratic behavior had so disturbed the community that Plaintiff was called to a hearing before the Defendant's Student Disciplinary Committee. Charges were presented against her and evidence was taken, and at the conclusion of the first hearing, Plaintiff was offered a mental health withdrawal so that she could seek treatment. Plaintiff declined the offer and, following the second day of hearing, Plaintiff was found responsible for violations of Defendant's Standards of Conduct (for disruption or obstruction of teaching, research, administration, or other University activities, and for dishonesty). She was suspended from CSOL from February 27, 2024 through January 1, 2025 and as part of her sanctions is required to have a psychological evaluation by a licensed psychologist.

Plaintiff commenced this civil action against Defendant in July 2024 and the operative complaint is her Second Amended Complaint (Dkt. 38), to which Defendant filed its Amended Answer on November 8, 2024 (Dkt. 40). Plaintiff filed an unpermitted "reply" to Defendant's Answer on November 11, 2024 (Dkt. 41). The thrust of her claims against Defendant is that it violated her rights under Title IX through various means, violated her rights under the California Education Code, the Ralph and Bane Civil Rights Acts, and intentionally inflicted emotional distress on her. As the evidence will show, Plaintiff was never subjected to any unlawful conduct, and Defendant did not violate her rights in any way. Further, Defendant attempted many times to assist Plaintiff in getting counseling or other help. Defendant intends to present several affirmative defenses including estoppel, failure to mitigate damages, comparative fault, and Plaintiff's lack of capacity.

## 2. **Subject Matter Jurisdiction**

Jurisdiction in this Court is asserted under the provisions of 28 U.S.C. §1331. This action arises under the provisions of Title IX of the Education Amendments of 1972. This

4

Court has supplemental jurisdiction over the state claims asserted herein pursuant to 28 U.S.C. §1367.

**3. Legal Issues**

1. Plaintiff's Position

Plaintiff reported ongoing discrimination and harassment when she emailed Defendant and its employee, Barry McDonald, stating she would call the police if it did not stop, and Defendant responded within 24-hours by emailing Plaintiff and restricting her from her education without cause. Defendant refused to initiate Title IX support. After Plaintiff sent an email to Defendant dated February 13, 2024 seeking any factual basis other than retaliation for its actions, Defendant's response on February 14, 2024 provided no basis whatsoever. *See* 34 CFR § 106.71 ("when a recipient has information about conduct that reasonably may constitute retaliation under Title IX or this part, the recipient is obligated to comply with 34 CFR § 106.45 (and initiate unbiased support)"). Plaintiff was sanctioned for previously truthfully reporting and lawfully opposing pervasive sex-based discrimination from McDonald, Alexis Joyce, Tom Stipanowich, and Stephanie Williams. When Plaintiff opposed pervasive sex-based discrimination by reporting it to Defendant via email, the Defendant violated Title IX law by enacting swooping retaliation, simultaneously proving deliberate indifference to employee discrimination, purposely encompassing protected opposition to previous discriminatory acts punitively and denying her equal access to education. Id.

In the process, Defendant took deliberate measures to avoid any employee or student being accountable through questioning; instead, there was an informal, social interaction via email that produced four replies focused on not liking Plaintiff for reasons such as her protected class status, while nonspecifically praising harassers in deference, but without relevant legal or factual basis. For example, when students

participating in discrimination were asked directly via email about discrimination, including if McDonald made the disparaging comment that Plaintiff was "old," not the verbatim comment "so she's old" with relevant context, two students' responses cited as proof it did not occur include: 1) never answering the question at all despite a lengthy, rambling, biased essay including memes like "haha!" (and while joking she was multitasking) focusing mostly on being competitive with or showing discriminatory disdain for Plaintiff's age, age-appropriate demeanor, and experience as a college Professor; and 2) stating "it is my recollection [this never occurred]." These answers are invalid, incomplete, and omit pertinent facts, such as student (1)'s own overt discriminatory acts harassing Plaintiff as "old" during an ABA-mandatory exam and antagonizing Plaintiff for her response to sex-based harassment, and student (2)'s overt lie in other parts of his answer.  Student (1)'s failure to answer to whether McDonald made this statement coupled with her committing the same discriminatory acts is proof positive, not negative, of systemic discrimination.

The male student McDonald said this to directly was also not required to respond on the record, and no one- no barred attorney and tenured professor, and no adult, professional student whose informal written statement was accepted as legally-binding gospel- was required to submit to questioning.  And there was no investigation at all into McDonald's other or Stipanowich's reported sex-based discrimination.   There was also no evidence or investigation into Goodno's statements at all and no showing of dishonesty whatsoever.  The official letter from Defendant dated February 27, 2024, was wrought with false statements, mischaracterizations, and discriminatory intent, a fact that will be elucidated word-for-word.  Plaintiff was not allowed to acquire evidence and was held responsible for not presenting students to testify at a retaliatory proceeding where she was placed under duress and told no witnesses were allowed.  And while the school maintains

6

PARTIES' JOINT RULE 26(f) REPORT

cameras with recording capability in each room, the Defendant decidedly opted to stop recording once a record of discrimination existed.

The school failed to abide by its own Title IX policies and thus facilitated a deliberate indifference that allowed McDonald to continue the discrimination into the next semester and permitted pervasive discrimination from the student body. *See Summary of Major Provisions of the Department of Education's Title IX Final Rule*, U.S. Dept. of Educ., com. 13, p. 9 ("charging an individual with code of conduct violations that do not involve sexual harassment, but arise out of the same facts and circumstances as a report [of discrimination] . . . for the purpose of interfering with any right or privilege secured by Title IX constitutes retaliation").

The limited record of investigation is proof and an extension of the pervasive discrimination that occurred. Frivolity ceases when palpable damage occurs to an innocent professional's life unjustly. *See, e.g., Gallant v. Bd. Of Trustees of Cal. St. Univ.*, 997 F.Supp. 1231, 1234 (N.D. Cal. 1998) (quoting *Harris v. Forklift Systems*, 510 U.S. 17, 20, 22 (S.Ct. 1993) "[a female was] often insulted . . . because of her gender and often made [the] target of unwanted sexual innuendos," including "sexual innuendos about [hers] and other women's clothing" and public sexual insults "in front of other[s]," the Court held this conduct can sufficiently "detract from [her] job performance, discourage [people] from remaining on the job, or keep them from advancing in their careers"); *Donovan v. Poway Unified School Dist.*, 167 Cal.App.4th 567, 618 (2008) (holding a school official telling a student initiating reports of ongoing discrimination and harassment to "quit interrupting him with all these incidents" supported deliberate indifference).

Legal issues include 1) failure to initiate Title IX support despite a known report of sex-based discrimination and a record of pervasive discrimination on campus; 2) retaliation via restriction from her education followed by a retroactive hunt for

causation beyond faculty and student discrimination; 3) deliberate indifference to pervasive sex-based discrimination for failing to respond lawfully through the Title IX office whose investigative protocols align with the law; 4) punitive retaliatory action for reporting discrimination with embedded, additional dishonest, biased characterization of evidence in official proceedings.

A. Plaintiff endured numerous threats to her person, property, and life through Defendant employees publicly making violent gestures with their hands along with gestures and discriminatory comments directed at Plaintiff during ABA-mandatory lectures and sessions, and causing the student body to do the same. Plaintiff's personal property was vandalized on three separate occasions and she was badgered, intimidated, and punished for reporting misdemeanor offenses to Defendant and for opposing violent sex-based discrimination. Defendant violated several state civil rights statutes, including the Ralph Act and Bane Act, and the Cal. Educ. Code § 66270, when it facilitated this pervasive discrimination and intimidated and coerced Plaintiff for reporting it.

Legal issues include: 1) retaliation for opposing violent homophobia, including escalating use of gun gestures, a practice which ceased when Plaintiff reported it was threatening; and 2) discrimination endured due to defamatory, damaging comments and gestures directed at Plaintiff which resulted in three incidents of misdemeanor vandalism and pervasive student-body discrimination.

2. <u>Defendant's Position</u>

Plaintiff's Second Amended Complaint (Dkt. 38) alleges claims under Title IX that she was harassed and then retaliated against when she complained to Defendant. She further makes claims under California's Ralph Act and Bane Act that Defendant used violence or threats of violence, and otherwise interfered with her right to education, including that under California Education Code § 66270, and intentionally caused her

emotional distress. The predicate of Plaintiff's suit is that she was mistreated in so many ways by Defendant's employees and her classmates. However, as the evidence will show, Plaintiff essentially imagined much of the conduct of which she complained, with no witnesses or documentation to substantiate the many hurtful and false allegations she hurled at Defendant's faculty, staff and students. In fact, the many witnesses here uniformly and expressly disclaimed Plaintiff's account of events. And "a plaintiff alleging a Title IX claim against a school that arises from student-on-student or faculty-on-student sexual assault must establish five elements … Second, the plaintiff must have suffered harassment that is so severe, pervasive, and objectively offensive that it can be said to deprive the plaintiff of access to the educational opportunities or benefits provided by the school." *Karasek v. U.C. Regents*, 956 F.3d 1093, 1105 (9th Cir. 2020). Plaintiff's Title IX claims based on harassment founder when she cannot establish that the harassment actually took place. Similarly, Plaintiff's Title IX retaliation claims fail if she cannot establish that Defendant disciplined her in response to a protected activity—as opposed to disciplining her for repeatedly making outrageous and unsubstantiated accusations against her school community. Further, Plaintiff's state law claims are all premised on the occurrence of events as attested to by Plaintiff alone. Therefore the main legal and evidentiary issue in this action is Plaintiff's lack of credibility and the weight of many witness who will testify that the events she claims occurred, did not in fact occur.

Other legal issues Defendant anticipates being raised at some point after completing adequate discovery will be: (1) Plaintiff's capacity to proceed in *pro se*; (2) whether this action may be deemed frivolous and dismissed; (3) whether Plaintiff's rejection of a pre-discipline offer to withdraw from school to attend to her mental health, is persuasive evidence of her waiver, consent, estoppel, failure to mitigate damages, and superseding causation; and (4) whether Plaintiff has in fact exhausted the administrative or internal remedies prerequisite to this action.

**4.** **Parties, Evidence, Etc.**

    A. Plaintiff's Position

        i.     Parties

Plaintiff believes that the Complaint properly names Defendant. Plaintiff reserves the right to add additional Defendant parties, if needed.

        ii.    Percipient Witnesses

1. Jacob Yadegar
2. Jonny Yadegar
3. Alicia Parnell
4. Arnold Barba
5. Bryan Weitzman
6. Conor Fairtlough
7. Colleen Graffy
8. Kyle Gillick
9. Matt Dunn
10. Suzanne Freyer
11. Anton Jones
12. Unidentified student
13. Tom Stipanowich
14. Barry McDonald
15. Sharon Beard
16. Naomi Goodno
17. Stephanie Williams
18. Chalak Richards
19. Connie Horton
20. Alexis Joyce

21. Jason Jarvis

22. Jim Gash

23. Grace Brandt

iii. Key Documents

a.    Email dated September 26, 2023 from Plaintiff to Alexis Joyce opposing her discrimination and removing consent from her access to professional decisions in Plaintiff's life.

b.    Email dated September 26, 2023 from Plaintiff to Chalak Richards reporting misdemeanor book defacements.

c.    Email dated October 21, 2023 from Britney Summerville-Brannon to Plaintiff offering Title IX support after the October 17th meeting regarding Stipanowich's and Joyce's sex-based harassment, as well as chronic homophobic gestures and hostility.

d.    (To be produced) written statement to Stephanie Williams in October 2023 stating her discriminatory actions were creating a hostile learning environment.

e.    Photos of the four pages of Plaintiff's Criminal Law textbook that were vandalized.

f.    Email dated January 5, 2024 from Barry McDonald denying lecture recordings.

g.    Constitutional Structure syllabus stating, in relevant part, that recording lectures was prohibited.

h.    Email dated February 6, 2024 from Plaintiff to Barry McDonald opposing his discriminatory jokes and actions against her.

i.     Email dated February 9, 2024 from Stephanie Williams providing corroboration Plaintiff was not disruptive and disproving other student statements.

j.     Email dated February 13, 2024 from Plaintiff to Jay Brewster stating there was a lack of facts or causation for restricting Plaintiff from classes and providing evidence of discriminatory intent.

k.     Email dated February 14, 2024 from Jay Brewster also not providing any factual basis for Defendant actions other than retaliation.

l.     Email dated February 24, 2024 from Colleen Graffy stating history of reports of serial misdemeanor book defacements.

m.    Email dated February 23, 2024 sent from Chalak Richards during the Defendant's retaliatory sanctions proceedings.

n.     Letter dated February 27, 2024 from Sharon Beard outlining retaliatory, dishonest, discriminatory sanctions.

o.     Articles authored by Plaintiff during the Summer 2023 and Fall 2023 semesters.

B. <u>Defendant's Position</u>

i.     Parties

The Plaintiff in this action is Kira Howell. The Defendant is Pepperdine University.

ii.    Witnesses

The main percipient witnesses in this action as Defendant understand them at this time are:

- Kira Howell
- Chalak Richards Guinses
- Jason Jarvis
- Sharon Beard

12

PARTIES' JOINT RULE 26(f) REPORT

- Tom Stipanowich
- Barry McDonald
- Alexis Joyce
- Stephanie Williams
- Colleen Graffy
- Naomi Goodno
- LaShonda Coleman
- Nivla Fitzpatrick
- Meghan McGuire
- Britney Summerville Brannan
- Dr. Anton Jones
- Students who attended classes and group activities with Plaintiff

iii.    Documents

The key documents on the main issues in this action will consist of:

- Defendant's files with respect to various complaints Plaintiff made while enrolled at CSOL
- Defendant's Student Disciplinary Committee files related to Plaintiff
- Statements by Defendant's faculty, deans and staff regarding Plaintiff's allegations
- Correspondence between Plaintiff and Defendant's employees
- Plaintiff's medical documentation regarding her alleged emotional distress and mental state
- Plaintiff's documentation regarding her alleged economic damages

**5. <u>Damages</u>**

A. <u>Plaintiff's Position</u>

PARTIES' JOINT RULE 26(f) REPORT

Plaintiff estimates provable damages, less the maximum legal amount recoverable for punitive damages which are requested at the Court's discretion, due to lost wages, earning capacity, tuition, compensatory damages for emotional distress and statutory violations in the amount of $10,000,000.00.

B. Defendant's Position

Defendant denies that Plaintiff has been damaged in any amount, or at all, as a result of any acts or omission on the part of Defendant, and denies that Plaintiff is entitled to any recover in this action whatsoever.

**6. Insurance**

Defendant holds an insurance policy with United Educators.

**7. Motions**

**a) Procedural Motions**

1. Plaintiff's Position

There are currently no pending procedural motions.  Plaintiff may seek to file a third amended complaint to add parties, and/or add other claims, but only if doing so is necessary to properly adjudicate the current case.

2. Defendant's Position

Defendant does not anticipate pursuing any procedural motions at this time and reserves the right to oppose any motion by Plaintiff to add additional claims.

**b) Dispositive Motions**

1. Plaintiff's Position

Plaintiff intends to move for summary judgment on some or all of the causes of action, but reserves final decision to do so until after discovery has progressed.

2. Defendant's Position

PARTIES' JOINT RULE 26(f) REPORT

Defendant intends to move for summary judgment, or in the alternative, partial summary judgment, once sufficient discovery has been completed. Should trial take place in this matter, Defendant also anticipates filing a motion to bifurcate the liability and damages phases, as well as motion *in limine.*

**8. Manual for Complex Litigation**

The parties agree that use of the Manual for Complex Litigation is not necessary at this time.

**9. Status of Discovery**

    1. Plaintiff's Position

Per Judge Hsu's Standing Order E(3), Plaintiff will issue Rule 26(a) initial disclosures on December 4, 2024. Plaintiff intends to propound written discovery requests and notice depositions. Plaintiff reserves the right to engage in expert discovery, if necessary, but Plaintiff believes all issues are matters of law and not matters for expert opinion.

    2. Defendant's Position

Defendant will serve Rule 26(a) initial disclosures on December 4, 2024. Thereafter, Defendant will serve written discovery and conduct Plaintiff's deposition. Defendant anticipates retaining experts and conducting expert discovery.

**10. Discovery Plan, Rule 26(f)(3)(A)-(F)**

    1. Plaintiff's Position

    a) Rule 26(a) Initial Disclosures

Plaintiff will provide initial disclosures on December 4, 2024, following the deadline set forth in Fed. R. Civ. Pro. 26(f)(1).

    b) Subjects Of Discovery

Plaintiff will propound discovery requests into communications amongst Defendant employees and students, personnel files related to discrimination and disciplinary proceedings, contact information of all relevant employees and students, policies and procedures related to harassment and discrimination, and evidence used by Defendant in retaliatory proceedings.

    c) <u>Phases of Discovery</u>

Plaintiff does not believe discovery needs to be completed in phases.

    d) <u>Changes On Limitations to Discovery</u>

**DEPOSITION LIMITS:** Plaintiff anticipates needing to take more than ten depositions and now seeks leave of the Court to take up to fifteen depositions pursuant to Fed. R. Civ. P. 30(a)(2)(i). Plaintiff asserts the nature of the case demands key witnesses and participants be deposed and if parties reach settlement prior to exhaustion of leave of the Court, there is no loss suffered. Not allowing all depositions, including Defendant's employees who have never been required to submit to questions and answers on the record, will deny access to justice under these unique circumstances.

**DEPOSITION OFFICER:** Plaintiff also seeks leave of the Court to allow taking of depositions without an officer present as allowed under Fed. R. Civ. P. 29(a) and Fed. R. Civ. P. 30(b)(5)(A). Plaintiff is appearing *pro se* and this will allow justice to be sought while relieving her of prohibitive financial burdens. Meet and confer between parties on November 20, 2024 was unsuccessful at achieving joint resolution. Plaintiff is amenable to any and all insight or suggestion to relieve the cost burden associated with court reporter employ that will meet the requirements of both parties, keeping in mind Defendant employees and students could have submitted to questions on the record for free within their institution and took drastic, unlawful measures to avoid doing so.

**DEPOSITION RECORDING:** Plaintiff also seeks joint stipulation and leave of the Court to take depositions remotely pursuant to Fed. R. Civ. P. 30(b)(4) and to use Zoom

PARTIES' JOINT RULE 26(f) REPORT

AI Companion to transcribe. Meet and confer was unsuccessful at achieving joint resolution.  Plaintiff asserts the rules require only that parties each pick a unique color for bracketing transcripts throughout the litigation, and when rules also require parties to jointly review any records cited which are the subject of a dispute, there is no chance of inaccuracy.  Plaintiff respectfully asks the Court for leave to use lodged video files and Zoom transcriber to avoid prohibitive costs associated with deposition transcription services.

**DEPOSITION COSTS:** Plaintiff respectfully asserts that Defendant's Affirmative Defenses remain on the pleadings, and she requests it provide any <u>unrequired</u> services it demands, including court reporters and transcription services, up front.

**DEPOSITION CONDUCT:** Plaintiff also gently asserts proactively that ABA Model Rules of Professional Conduct Rule 3.3 states attorneys have a duty of candor to the court, and this precludes them from knowingly presenting false evidence or testimony.

    2.  <u>Defendant's Position</u>

    a)  <u>Rule 26(a) Initial Disclosures</u>

Defendant will serve initial disclosure on December 4, 2024.

    b)  <u>Subjects Of Discovery</u>

Defendant's discovery will explore Plaintiff's allegations, including but not limited to the purported harassment she contends occurred during class and group events, which was not witnessed by other attendees. Defendant will also conduct discovery regarding Plaintiff's alleged damages, emotional distress, and mental state.

    c)  <u>Phases of Discovery</u>

Defendant does not believe that discovery needs to be conducted in phases.

    d)  <u>Changes On Limitations to Discovery</u>

Defendant does not believe that there need to be any changes made to the limitations on discovery.  Defendant responds to Plaintiff's proposed changes as follows:

**Deposition Limits**:  Defendant does not stipulate at this time to permit Plaintiff to take more than the 10 depositions she is allotted under Fed. R. Civ. Pro. 30(a).  Defendant is willing to meet and confer regarding a potential stipulation to allow Plaintiff depositions over her limit of 10 after she has taken at least 5 depositions in the action, so that the parties can evaluate at that time whether more depositions than the Rules permit are reasonable and proportionate to the claims in this case.  Defendant is unwilling at this time, however, to stipulate to Plaintiff being permitted to take 1.5 times the amount of depositions she is allotted in this action before she has even taken one.  Nor has Plaintiff explained why depositions on written questions under Rule 31 would not be sufficient.  Finally, as discussed below, Plaintiff's effort to shift the cost of the reporting her depositions to Defendants, makes her asserted need for 15 depositions even more untenable to Defendant.

**Deposition Officer**:  Federal Rule of Civil Procedure 30(b)(5) states that "unless the parties stipulate otherwise, a deposition must be conducted before an officer appointed or designated under Rule 28."  Defendant is also not willing to proceed with depositions in this action without a Deposition Officer.  The Deposition Officer is assigned specific duties during and after the deposition under Rule 30(e) ("The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period) and (f) ("The officer must certify in writing that the witness was duly sworn and that the deposition accurately records the witness's testimony. The certificate must accompany the record of the deposition. Unless the court orders otherwise, the officer must seal the deposition in an envelope or package bearing the title of the action and marked 'Deposition of [witness's name]' and must promptly send it to the attorney who arranged for the transcript or recording.")  Defendant is also concerned that, without a Deposition Officer and reporter, Plaintiff, who is

proceeding in pro se, will become abusive to the witnesses and counsel if she perceives that she is not receiving testimony with which she agrees. Defendant anticipates that there will be difficulties in the deposition process because of this dynamic where Plaintiff represents herself and is deposing witnesses whom she already accuses of lying and sexual harassment. Federal Rule of Civil Procedure 28 allows the Court to appoint a Deposition officer, which Defendant respectfully requests in lieu of proceeding without one, as the Plaintiff is requesting. *Houseton v. County of Los Angeles*, CV-23-6887 SVH (MRWx), 2024 WL 4797227 (slip copy) (C.D. Cal., Jan. 24, 2024) at *3 ("The responsibility for certifying the accuracy of a recording 'is not a trivial function.'") (citing *Alcorn v. City of Chicago*, 336 F.R.D. 440, 442 (N.D. Ill. 2020)).

**Deposition Recording/Transcription**: Defendant has no objection to conducting the depositions in this case remotely by Zoom. However, that does not excuse the need for a certified court reporter and/or videographer to record the testimony taken. Plaintiff has provided no authority explaining how "Zoom AI Companion"-generated transcripts or zoom video recordings of depositions are a sufficient substitute for certified transcripts and videos for use in summary judgment and trial proceedings. *See, e.g., Heard v. County of San Bernardino,* 5:20-cv-02335-JWH-kk, 2024 WL 4328896 (slip copy) (C.D. Cal., Mar. 25, 2024) at *4 (Although the parties may conduct a Zoom deposition, there must still be a third-party deposition officer present … Courts routinely reject deposition recordings, including those conducted by Zoom, because the recording was without the hiring and presence of a videographer, who has her own procedures and technology for a certified video deposition.") (internal quotations omitted).

**Deposition Cost**: Rule 30(b)(3) states the noticing party bears the costs of recording the deposition. Plaintiff's request to shift to the Defendant the cost for obtaining an appropriate deposition officer and court reporter for depositions she intends to notice

should be denied.  Granting such a request would inequitably shift the financial burden of prosecuting this action, which Defendant believes to be frivolous, onto Defendant.

**11.Discovery Cut-off**

1. Plaintiff's Position

Plaintiff anticipates discovery cut-off as August 9, 2024 (based on proposed trial date of January 5, 2026).

2. Defendant's Position

If the Court accepts Plaintiff's proposed trial date of January 5, 2026, the discovery cut-off should be August 9, 2025.  If the Court sets an earlier trial date, the discovery cut off should be 18 weeks before the trial.

**12.Expert Discovery**

1. Plaintiff's Position

Plaintiff does not anticipate engaging in expert discovery at this time, but reserves the right to do so at a later date. Plaintiff objects to Defendant's additional Independent Mental Examination request below as frivolous, redundant, and invasive of her privacy and dignity.  Plaintiff has fully complied with Defendant's unlawful, unethical, and arbitrary demands, Defendant approved of Anton Jones as the provider, Plaintiff met with him at length and received clear bill of mental health and competence, and forcing yet another evaluation simply to avoid liability is extreme and outrageous, especially given Defendant's longstanding knowledge of Plaintiff's cooperation and clearance occurring in July 2024 and its assertion otherwise on October 29, 2024.  See Dkt. 40, p. 38, ¶ 12.

This action is based on Defendant's unlawful discrimination and retaliation, not on Defendant's unfounded, purely defensive assertion that a high-functioning, professional woman should be evaluated because she opposes overt actions that discriminated against her, an activity that Title IX protects and supports by prohibiting punitive action that denies

access to education.  This would dissuade any reasonable citizen from pursuing remedy via the court and Plaintiff requests this action be denied and the current approved provider's given statement be maintained as sufficient.

Plaintiff hopes Defendant will consider developing a lawful policy and practice on its campus that abides by Federal and State law, to include abiding by its own published policies requiring Title IX office involvement upon report of sex-based harassment occurring here on August 30, 2023, October 17, 2023, and February 6, 2024, and terminating the unlawful, conclusory, deliberately indifferent practice of requiring, as stated below, development of a "treatment plan" as punishment for lawfully reporting discrimination and for no other credible reason whatsoever.  *See Davis Next Friend LaShonda D. v. Monroe Cty. Bd. Of Educ.*, 526 U.S. 629, 642 (S.Ct. 1999) (citing *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290-91 (S.Ct. 1989) and opining when the school intentionally acts "not to remedy the violation," it violates Title IX, and its "own deliberate indifference effectively 'cause[s]' the discrimination"); see also *U.S. Dept. of Educ. Title IX Final Rule Overview*, U.S. Dept. of Educ. (2024) ("[S]chools must offer free supportive measures . . . to restore or preserve equal access to education").

Plaintiff also respectfully asserts Defendant is refusing to stipulate to deposition matters, which only hinders accountability, while committing to costly experts and other redundant defensive resources.

### 2. Defendant's Position

Defendant will seek an Independent Mental Examination of Plaintiff pursuant to Federal Rule of Civil Procedure 35, based on Plaintiff's pursuit of a claim for Intentional Infliction of Emotional Distress, as well as based on Defendant's understanding that Plaintiff may be encountering mental health issues that are relevant to her underlying conduct at CSOL upon which this action is based.  Dr. Anton Jones, referenced in Plaintiff's statement above, is a provider who was selected by Plaintiff to develop an

appropriate treatment plan and provide a written evaluation of Plaintiff's readiness to return to CSOL.  Defendant anticipates subpoenaing Dr. Jones' records; however now that this matter is in litigation and Plaintiff has asserted a claim for Intentional Infliction of Emotional Distress, Defendant is entitled to retain its own expert to examine Plaintiff, provide an expert report, and testify at trial.

Defendant also anticipates engaging expert witnesses to testify regarding their opinions concerning Plaintiff's alleged damages and mental state.

To the extent Plaintiff designates any rebuttal expert witnesses, Defendant requests that it be given time to conduct their depositions, notwithstanding the expert discovery cutoff indicated in the enclosed worksheet.

## 13. Settlement Conference/Alternative Dispute Resolution (ADR)

### A. Plaintiff's Position

No settlement negotiations between parties have occurred thus far. Plaintiff is agreeable to the Court's Mediation Panel as the preferred ADR procedure.  Plaintiff asserts this matter is presented to the Court for resolution as quickly and efficiently as possible.

### B.  Defendant's Position

Defendant is willing to participate in ADR procedure 2, a neutral from the Court's mediation panel.  Consistent with its position throughout Plaintiff's enrollment at CSOL, Defendant is willing to engage in any discussions with Plaintiff, including settlement discussions, that would assist her in resolving her perceived disputes with Defendant.

## 14. Trial Estimate

### A. Plaintiff's Position

Plaintiff estimates a jury trial may take 5-7 days. Plaintiff anticipates calling 5-10 witnesses, although this will depend on overlap with Defendant's witness list and information obtained during discovery.

Defendant's Position

Defendant estimates that a trial of this action would consume at least 7-10 court days, due to the number of potential witnesses and third parties, expert testimony, and Plaintiff's *pro se* status.

**15.Jury or Court Trial**

1. Plaintiff's Position

Plaintiff seeks a jury trial.

2. Defendant's Position

Defendant is amenable to a bench trial, but understands that Plaintiff seeks a jury trial.

**16.Consent to Trial Before a Magistrate Judge**

The parties do not consent to proceed before a magistrate judge.

**17.Lead Trial Counsel**

A. Plaintiff

Plaintiff Kira Howell is appearing pro se.

Defendant

Karen J. Pazzani

**18.Independent Expert or Master**

A. Plaintiff's Position

Plaintiff does not request the Court appoint an independent master pursuant to Rule 53. In support of Defendant's proposal below, Plaintiff asserts it is the detailed accounting of chronic discriminatory insults, unsolicited sex-based comments and acts, criminal acts, and abuses that is the sole subject matter of all depositions, although each and every instance of "erratic" behavior, an allegation that developed only as a defense, should be examined at deposition and lodged with the Court as well.

PARTIES' JOINT RULE 26(f) REPORT

B. <u>Defendant's Position</u>

Defendant does not request an independent master at this time. However, should substantial issues arise related to party conduct at depositions, Defendant reserves the right to request a discovery referee/master to be present at depositions.

**19. Other issues**

A. Plaintiff's Position

**STUDENT REPRESENTATION:** Defendant's counsel requested to act as recipient and representative of deposed students. Plaintiff vehemently opposes this and asserts that the offer is further proof of Defendant's policy of deliberate indifference to discrimination, defined by the courts as a policy or practice that fails to educate or protect against discrimination. If the Defendant represents students who are witnesses and/or parties to key events or have been cited as harassers or colluders, this elevates them and offers coercive incentive to act solely to help the school *avoid liability for discrimination* when they are legally equal and similarly situated to the Plaintiff, a known victim of Defendant's discrimination and of student-on-student harassment and discrimination. As such, Plaintiff respectfully requests this offer be discoverable to the jury and considered by the Court when determining discrimination claims (Counts I-VI and IX).

**MEET AND CONFER:** Plaintiff agrees with Defendant below that future meet and confers should be recorded by both parties and she supports Defendant's position below requesting an order from the Court, even if it occurs at a later date. It is the Plaintiff who has endured angry posturing and insults during mandatory meet and confers. Plaintiff stated repeatedly that Defendant was seeking to represent students and this was an issue. Defendant did not disagree with the assertion.

**STUDENT DEPOSITIONS:** CSOL is a law school, and by Defendant's own admission below, the students are about to be barred attorneys. Depositions are a normal part of American civil procedure. However, if there is a neutral, unbiased manner of

subpoenaing and scheduling student depositions, Plaintiff appreciates the Court's order resolving this issue for parties.

**STUDENT RECORDS:** Plaintiff does not currently plan to pursue any student's education records as mentioned below, nor has she even alluded to it. The legal issues center on the Defendant's legal responsibility, they do not necessarily center on students, their involvement, their disparate benefits, or their undeposed opinions.

**STUDENT PSEUDONYMS:** Plaintiff generally opposes Defendant's request to use pseudonyms for those cited as participants, those who make legally-binding statements about Plaintiff, and those whose written statements were used as legally-binding evidence that injured Plaintiff's life (and which were never subject to proper due process). However, the legal issues center on the Defendant, and if allowing pseudonyms will assure any student that their truthful response during this litigation, and any other response they previously provided, will not be used against them, Plaintiff stipulates. Plaintiff also stipulates to lodging student depositions under seal.

B. Defendant's Position

Plaintiff's statement is a misrepresentation of the parties' discussion at the Rule 26(f) meet and confer. Defendant's counsel advised Plaintiff that if she wished to depose students, she would need to issue a subpoena to those students. Because Plaintiff is proceeding *pro per* and has expressed concern regarding the costs of litigation, Defendant's counsel told Plaintiff that if she provided Defendant's counsel with a list of students she plans to depose, Defendant's counsel would inquire of those students whether they would like Defendant's counsel to accept service of the subpoena on their behalf. This would reduce the financial burden of the litigation on Plaintiff and avoid the potential disruption that is likely to occur if Plaintiff attempts to serve subpoenas on students on the CSOL campus.

PARTIES' JOINT RULE 26(f) REPORT

To the extent these misrepresentations continue to occur, Defendant reserves the right to seek an order that all future meet and confer conferences be recorded or take place via written communication only.

Defendant also wishes to make the Court aware that to the extent Plaintiff seeks discovery of educational records related to other students, those students have privacy rights pursuant to the Family Education Rights and Privacy Act, 20 U.S.C. Section 1232g, et seq., ("FERPA"). Defendant cannot produce other students' educational records absent a Court order. See 34 CFR § 99.31(a)(9)(i). In addition, Defendant may request that other students, who are all aspiring members of the legal community, be referred to by pseudonyms to protect their privacy.

DATED: November 25, 2024                    By:    /s/Kira Howell

                                                   Kira Howell

                                                   Plaintiff In Pro Per

DATED:  November 25, 2024        KAREN J. PAZZANI
                                 PAZZANI & SANDHU LLP


                                 By:   /s/ Karen J. Pazzani
                                       KAREN J. PAZZANI
                                       Attorneys for Defendant
                                       PEPPERDINE UNIVERSITY

PARTIES' JOINT RULE 26(f) REPORT

**JUDGE WESLEY L. HSU**
## SCHEDULE OF PRETRIAL AND TRIAL DATES WORKSHEET

*Please complete this worksheet jointly and file it with your Joint Rule 26(f) Report.*
**The Court __ORDERS__ the parties to make every effort to agree on dates.**

| Case No. 2:24-cv-06332-WLH-RAO | Case Name: KIRA HOWELL v. PEPPERDINE UNIVERSITY | | |
|---|---|---|---|
| **Trial and Final Pretrial Conference Dates** | | **Parties' Joint Date mm/dd/yyyy** | **Court Order** |
| Check one: ☑ Jury Trial or ☐ Court Trial ☐ Magistrate Judge (***Monday*** at 9:00 a.m., within 12 months of Scheduling Conference) Estimated Duration: 3    Days *Trial Subject to Trailing per Standing Order* | | 01/05/2026 | ☐ Jury Trial ☐ Court Trial |
| Final Pretrial Conference ("FPTC") [L.R. 16] (***Friday*** at 3:00 p.m., at least 18 days before trial) | | 12/12/2025 | |

| Event [1] Note: Hearings shall be on ***Fridays*** at 1:30pm Other dates can be any day of the week | **Weeks Before FPTC[2]** | **Parties' Joint Date mm/dd/yyyy** | **Court Order** |
|---|---|---|---|
| Last Date to Hear Motion to Amend Pleadings / Add Parties [Friday] | | 07/25/2025 | |
| Fact Discovery Cut-Off (No later than deadline for filing dispositive motion) | 18 | 08/08/2025 | |
| Expert Disclosure (Initial) | 16 | 08/22/2025 | |
| Expert Disclosure (Rebuttal) | 14 | 09/05/2025 | |
| Expert Discovery Cut-Off | 14 | 09/05/2025 | |
| Last Date to Hear Motions • Rule 56 Motion due at least 6 weeks before hearing; • Opposition due 2 weeks after motion is filed before hearing; • Reply due 1 week after Opposition is filed | 12 | 09/19/2025 | |
| Last Date to Hear *Daubert* Motions | 8 | 10/17/2025 | |
| Deadline to Complete Settlement Conference [L.R. 16-15] *Select one:*  ☐ 1. Magistrate Judge *(with Court approval)*  ☑ 2. Court's Mediation Panel  ☐ 3. Private Mediation | 5 | 11/07/2025 | ☐ 1. Mag. J. ☐ 2. Panel ☐ 3. Private |
| **Trial Filings (first round)** • Motions *In Limine* (except *Daubert*) • Memoranda of Contentions of Fact and Law [L.R. 16-4] • Witness Lists [L.R. 16-5] • Joint Exhibit List [L.R. 16-6.1] • Joint Status Report Regarding Settlement • Proposed Findings of Fact and Conclusions of Law [L.R. 52] (court trial only) • Declarations containing Direct Testimony, if ordered (court trial only) | 4 | 11/14/2025 | |
| **Trial Filings (second round)** • Oppositions to Motions in Limine • Joint Proposed Final Pretrial Conference Order [L.R. 16-7] • Joint/Agreed Proposed Jury Instructions (jury trial only) • Disputed Proposed Jury Instructions (jury trial only) • Joint Proposed Verdict Forms (jury trial only) • Joint Proposed Statement of the Case (jury trial only) • Proposed Additional Voir Dire Questions, if any (jury trial only) • Evidentiary Objections to Declarations. of Direct Testimony (court trial only) | 2 | 11/28/2025 | |

1  Once issued, this "schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4).

2 The numbers below represent the Court's recommended timeline. The parties may propose alternate dates based on the needs of each individual case. Class Actions and ERISA cases may need to vary from the above.