KAREN J. PAZZANI (State Bar No. 252133)
kpazzani@psemploymentlaw.com
PUNEET K. SANDHU (State Bar No. 254726)
psandhu@psemploymentlaw.com
JOSEPH V. MARRA III (State Bar No. 238181)
jmarra@psemploymentlaw.com
PAZZANI & SANDHU LLP
700 N. Central Avenue, Suite 460
Glendale, CA 91203
Telephone: (213) 362-1860
Facsimile: (213) 362-1861

Attorneys for Defendant
PEPPERDINE UNIVERSITY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIRA HOWELL,<br><br>        Plaintiff,<br><br>    v.<br><br>PEPPERDINE UNIVERSITY,<br><br>        Defendant. | Case No.  2:24-CV-06332-WLH-RAO<br><br>**PEPPERDINE UNIVERSITY'S OPPOSITION TO PLAINTIFF'S *EX PARTE* MOTION FOR A PRELIMINARY INJUNCTION**<br><br>Date: TBD<br>Time: TBD<br>Place: First Street Courthouse<br>350 West 1st St, Courtroom 9B<br>Los Angeles, California |

1

DEFENDANT'S OPPOSITION TO PLAINTIFF'S *EX PARTE* MOTION FOR A PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

I. INTRODUCTION AND SUMMARY OF ARGUMENT ........................... 4

II. STATEMENT OF FACTS ................................................................... 6

    A. Pepperdine Suspended Plaintiff After Her Conduct Became Disruptive and She Engaged in Dishonesty. ....................................... 6

    B. Plaintiff Has Not Completed An Adequate Assessment and Treatment Plan. ............................................................................... 8

III. LEGAL ARGUMENT ........................................................................ 8

    A. Plaintiff's *Ex Parte* Application Is Procedurally Improper. ............... 8

    B. Plaintiff Failed to Meet Her Burden of Proof for a Temporary Restraining Order or Preliminary Injunction. .................................. 10

        1. *Plaintiff Did Not Establish a Likelihood of Success on the Merits.* ................................................................... 11

        2. *Plaintiff Did Not Establish a Likelihood of Irreparable Harm.* ................................................................... 12

        3. *The Balance of the Equities Does Not Favor an Injunction.* ............................................................... 13

        4. *The Public Would Not Benefit from an Injunction.* ................ 13

IV. CONCLUSION. .............................................................................. 14

# TABLE OF AUTHORITIES

**Cases**

*Doe v. St. Francis Sch. Dist.*,
   694 F.3d 869 (7th Cir. 2012) .................................................................. 12

*Granny Goose Foods, Inc. v. Brotherhood of Teamsters and Auto Truck Drivers Local No. 70 of Alameda County*,
   415 U.S. 423 (1974) ................................................................................. 9

*Havlik v. Johnson & Wales University*,
   509 F.3d 25 (5th Cir. 2007) ..................................................................... 12

*Mazurek v. Armstrong*,
   520 U.S. 968 (1997) ................................................................................. 10

*Porretti v. Dzurenda*,
   11 F.4th 1037 (9th Cir. 2021) .................................................................. 13

*Schaer v. Brandeis University*,
   432 Mass. 474 (2000) .............................................................................. 12

*West Point-Pepperell, Inc. v. Donova*,
   689 F.2d 950 (11th Cir. 1982) ................................................................. 10

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Defendant Pepperdine University ("Pepperdine") suspended Plaintiff in February 2024 because she violated Pepperdine's Standards of Conduct by engaging in (1) disruption or obstruction of teaching and University activities; (2) dishonesty; and (3) dishonesty to the Student Disciplinary Committee. Of particular concern, Plaintiff (falsely) made allegations that faculty and employees engaged in inappropriate conduct directed at her in front of large classes of students; however, Plaintiff could not identify any witnesses who could corroborate her allegations, and all faculty and students who Pepperdine contacted regarding her assertions (no less than 15) categorically denied that any such inappropriate conduct occurred. In addition, numerous students indicated that Plaintiff's behavior in class (including arguments with faculty and odd commentary) negatively impacted their experience in the classroom.

Plaintiff's conduct violated Pepperdine's Standards of Conduct. Thus, she was suspended from February 27, 2024 to January 1, 2025. Pepperdine recognizes that mental health issues are likely contributing to Plaintiff's behavior. Put simply, she appears to be suffering from delusions as her perception of what is occurring in large class settings is completely at odds with all other witnesses. Thus, on February 27, 2024, as part of the sanction for Plaintiff's misconduct, Pepperdine informed Plaintiff that before being readmitted, she would need to obtain a psychological evaluation by a licensed psychologist or psychiatrist to determine if there were contributing factors to the incidents that precipitated her suspension and develop an appropriate treatment plan. Plaintiff has not yet completed this portion of the sanction. The treatment plan submitted by her provided was insufficient and the provider has failed to respond to Pepperdine's follow up questions. Thus,

Pepperdine has not yet cleared Plaintiff to return to classes.

Plaintiff's *ex parte* application for a preliminary injunction appears to seek an order requiring Pepperdine to admit her to classes effective immediately. Her application should be denied because:

(1) it is procedurally improper as an *ex parte*. A preliminary injunction should only be granted following a noticed motion that provides the non-moving party a fair opportunity to prepare an opposition. Pepperdine has not had a fair opportunity to submit evidence in opposition to Plaintiff's *ex parte* application. The *ex parte* application was filed at approximately 6:45 p.m. on Sunday, January 12. With only 48 hours to respond, some of which fell over a weekend, Pepperdine has not had time to submit detailed declarations and evidence regarding the behavior that preceded Plaintiff's suspension, the investigations that Pepperdine undertook in response to Plaintiff's numerous false assertions, and the support services that Pepperdine made available to Plaintiff, which Plaintiff repeatedly rebuffed. Further, because Plaintiff has sought to seal many of the exhibits that she referenced in her memorandum of points and authorities and refused to provide copies of certain sealed exhibits to Pepperdine's counsel upon request, Pepperdine has had less than 12 hours to review documents that Plaintiff is asking the Court to consider. In addition, out of respect for Plaintiff, who is attempting to seal documents regarding her mental health assessment, Pepperdine has not included medical records with its opposition. To the extent the Court considers any medical records that Plaintiff attempted to submit, Pepperdine should be given an opportunity to address those records and submit records of its own.

(2) Plaintiff failed to carry her burden of demonstrating the required elements for the issuance of a preliminary injunction. Plaintiff's motion is not supported by competent, authenticated evidence. Even if her unsupported allegations were taken at face value, they do not establish a likelihood of success on the merits, that

Plaintiff will suffer irreparable harm, that the equities favor Plaintiff, or that the public interest supports an injunction.

## II. STATEMENT OF FACTS

### A. Pepperdine Suspended Plaintiff After Her Conduct Became Disruptive and She Engaged in Dishonesty.

Plaintiff was enrolled as a law student at Defendant Pepperdine University's Caruso School of Law ("CSOL") from summer 2023 to spring 2024. During that time, she exhibited erratic behavior towards her classmates and the CSOL faculty. Plaintiff falsely accused several professors, staff and students of serious misconduct that simply never occurred. Plaintiff was never able to provide any supporting witnesses or documentation to substantiate her claims (despite many of the alleged events occurring in front of dozens of students). For example, in August 2023, she reported to Pepperdine's Department of Public Safety that one of her professors had commented on her rear end during class, claiming the professor stated: "it drives me insane when a women put their hands over her butt." However, upon further questioning, Plaintiff admitted that the professor only stated "it drives me insane," and that she inferred that the comment was in reference to her rear end because she had recently left the class while covering her read end. (Dkt # 49-2.) In September 2023, she reported that she found writing in her textbook, which she now characterizes as "book defacement," which she believed was done by her elderly landlady. She claimed that students in her class had referenced her landlady in a hostile manner. (Dkt # 49-3, 49-4.) She later claimed that the defacement was continuing and that her landlady was not involved. (Dkt # 49-5.)[1]

---

[1] Plaintiff engaged in other disruptive and concerning behavior that was reported by her fellow classmates. However, out of respect for Plaintiff, who has sought to seal many of the records in this case, and the students who were involved in making reports regarding Plaintiff, Pepperdine is only referencing the facts that Plaintiff made public in her own *ex parte* application. Further, as discussed herein, Pepperdine did not have a fair opportunity to respond to Plaintiff's request for a

1  By February 2024, Plaintiff's false accusations and erratic behavior had so
2  disturbed the community that Plaintiff was called to a hearing before the
3  Pepperdine's Student Disciplinary Committee.  Plaintiff was found responsible for
4  violations of Pepperdine's Standards of Conduct (for disruption or obstruction of
5  teaching, research, administration, or other University activities, and for dishonesty).
6  (Beard Decl. ¶ 2 & Exh. A.)  The Student Disciplinary Committee found that she
7  falsely accused the Director of Career Center of making disparaging, misleading,
8  and untrue comments, that she falsely accused a proctor of heckling female students
9  during a midterm, and that she falsely accused several faculty members of making
10 derogatory and harassing comments about her.  (*Id.*)  Of note, many of purported
11 instances of harassing behavior that Plaintiff claimed were directed at her occurred
12 during large classes in front of numerous witnesses, yet Plaintiff was unable to
13 identify any witnesses who could corroborate her assertions and all of the students
14 that Pepperdine contacted denied that any harassing conduct occurred.  Pepperdine
15 students also reported that Plaintiff's behavior during classes disrupted the learning
16 environment and caused them to be concerned for their safety.

17  Following the Student Disciplinary Committee hearing, Plaintiff was
18 suspended from CSOL from February 27, 2024 through January 1, 2025.  As part of
19 her sanctions, Pepperdine also informed Plaintiff that before being readmitted, she
20 would need to obtain a psychological evaluation by a licensed psychologist or
21 psychiatrist to determine if there were contributing factors to the incidents that
22 precipitated her suspension and develop an appropriate treatment plan.  In higher
23 education, it is routine to ask a student who has been disciplined or suspended to
24 seek psychological evaluation or counseling when a suspected mental health issue is
25 involved.  This is done to ensure the success of the student in classroom and to

---

preliminary injunction because it was filed as an *ex parte* application rather than a noticed motion.  As this matter proceeds, Pepperdine will present additional evidence regarding Plaintiff's unusual behavior.

ensure that there is no disruption in the educational environment upon their return. (Fitzpatrick Decl., ¶ 2.)

### B. **Plaintiff Has Not Completed An Adequate Assessment and Treatment Plan.**

Plaintiff selected a medical provider who submitted a short assessment of Plaintiff on June 18, 2024. (Fitzpatrick Decl., ¶¶ 3-5.) The assessment did not acknowledge or address the issues that lead to Plaintiff's suspension, namely that she falsely reported events that she claims occurred before numerous witnesses that could not be substantiated by any witnesses. (Fitzpatrick Decl. ¶ 5.) On December 3, 2024, as the potential end of Plaintiff's suspension approached, Pepperdine's Director of the Counseling Center contacted Plaintiff's treating provider to discuss Plaintiff's current status, treatment plan, and to further discuss his initial response to Pepperdine's request for an assessment. Plaintiff's provider failed to respond to Pepperdine's outreach on several occasions and when he did respond, he provided short answers that did not demonstrate that he had an understanding of the events that lead to Plaintiff's suspension. (Fitzpatrick Decl. ¶¶ 6-11.) Thus, on January 13, 2025, Pepperdine informed Plaintiff that it was unable to clear her to return to classes because it had not yet received necessary information from her provider. (Fitzpatrick Decl. ¶ 12 & Exh. B.)

Pepperdine believes that without an adequate assessment of the differences between Plaintiff's perception and that of numerous other witnesses and a treatment plan to address any mental or medical condition that contributed to those perception issues, it is not safe for Plaintiff to return to the Pepperdine community.

### III. **LEGAL ARGUMENT**

### A. **Plaintiff's *Ex Parte* Application Is Procedurally Improper.**

Plaintiff's *ex parte* application for a preliminary injunction is procedurally improper. Plaintiff is not seeking a temporary restraining order. The Central

District Local Rules, Rule 65-1 states that when a temporary restraining order is not sought "an application for a preliminary injunction must be made not by order to show cause but by notice of motion filed and served as required by L.R. 6-1." Local Rule 6-1 requires all motions to be filed with 28-days' notice. Federal Rule of Civil Procedure 65(a) likewise states that the court "may issue a preliminary injunction only on notice to the other party."

"The notice required by Rule 65(a) before a preliminary injunction can issue implies a hearing in which the defendant is given a fair opportunity to oppose the application and to prepare for such opposition." *See Granny Goose Foods, Inc. v. Brotherhood of Teamsters and Auto Truck Drivers Local No. 70 of Alameda County*, 415 U.S. 423, 433 (1974).

By filing an *ex parte* application for a preliminary injunction, rather than a properly noticed motion, Plaintiff has provided Pepperdine only 48 hours to prepare an opposition. This did not provide Pepperdine with a fair opportunity to present the Court with detailed declarations regarding the reports it received regarding Plaintiff's disruptive and concerning behavior, the investigations it undertook in response to her (false) reports, and the outreach and support provided to her during her enrollment at Pepperdine.

Compounding the timing issues, prior to filing an *ex parte* application for a preliminary injunction, Plaintiff met and conferred with Pepperdine's counsel regarding an anticipated application to seal certain records. (Pazzani Decl. ¶ 2.) Pepperdine's counsel informed Plaintiff that it did not object to her seeking to seal her medical records and certain documents that Pepperdine had produced with its initial disclosures. Although Plaintiff apparently filed an application to seal documents prior to filing this *ex parte*, she did not serve the application to seal on Pepperdine. (Pazzani Decl., ¶¶ 3-4.) Nor did she provide Pepperdine with copies of the exhibits referenced as "sealed" in her memorandum of points and authorities

until less than 12 hours before Pepperdine's opposition was due. (Pazzani Decl., ¶ 5.) Plaintiff's memorandum of points and authorities cites to "sealed" exhibits that were not attached to her filing, including Exhibits G, H, and I, which Plaintiff characterizes these documents as demonstrating that she has no "disease or illness." Plaintiff produced these documents to Pepperdine at 9:08 a.m. on Tuesday, January 14, less than 12 hours before Pepperdine's opposition was due. (Pazzani Decl., ¶ 5.) Although Plaintiff has not obtained an order allowing her to seal these records, she has asked Pepperdine not to publicly file them or to reference them in public filings, further hindering Pepperdine's ability to submit a full opposition. Pepperdine has attempted to take a reasoned approach, balancing Plaintiff's request for privacy with its need to defend itself. (Pazzani Decl., ¶ 5.)

In short, Plaintiff's *ex parte* application for a preliminary injunction is procedurally improper and did not provide Pepperdine an adequate and fair opportunity to respond. It should be denied on this ground alone.

### B. Plaintiff Failed to Meet Her Burden of Proof for a Temporary Restraining Order or Preliminary Injunction.

Even if the Court were to review Plaintiff's *ex parte* application as a request for a temporary restraining order or if it were to consider her request for a preliminary injunction on the merits, her request should be denied.

As the moving party, Plaintiff bears the burden of persuasion. *See West Point-Pepperell, Inc. v. Donovan*, 689 F.2d 950, 956 (11th Cir. 1982). Because a preliminary injunction is an extraordinary remedy, the movant is required to carry its burden of persuasion by a "clear showing." *Mazurek v. Armstrong* 520 U.S. 968, 972 (1997). Plaintiff did not meet that burden. In fact, her motion is practically devoid of admissible evidence. The memorandum of points and authorities cites a handful of exhibits that are not authenticated by a declaration. Plaintiff submitted a declaration in support of her motion; however, it does not authenticate any of the

exhibits on which she is relying. Further, her declaration, which is riddled with hearsay and speculation, is not cited anywhere in the memorandum of points and authorities. Thus, Pepperdine and the Court are left to guess what evidence Plaintiff may have to support her assertions.

Even taking Plaintiff's allegations at face value, she has not established the elements for the issuance of preliminary injunction.

    1. *Plaintiff Did Not Establish a Likelihood of Success on the Merits*.

To the extent Plaintiff is trying to seek a preliminary injunction based on Pepperdine's decision to suspend her in February 2024, she cannot establish a causal connection between any purported protected activity and Pepperdine's decision to suspend her. Plaintiff was not subjected to an adverse action because she protested harassment. Rather, Pepperdine's decision to suspend her was based on her disruptions to the classroom environment and her repeated dishonesty. She made numerous false allegations regarding Pepperdine faculty and employees.

To the extent Plaintiff seeks a preliminary injunction because Pepperdine has not yet cleared her to return to classes, she likewise cannot establish a causal connection between any purported. Pepperdine believes that Plaintiff's disruptive actions and dishonesty while enrolled at Pepperdine may be the result of a mental health issue. Plaintiff's perception of events that occurred in large class sections is at odds with all other witnesses Pepperdine interviewed, suggesting that Plaintiff is suffering from delusions. As part of its sanction, Pepperdine required her to have a psychological evaluation to determine if there were contributing factors to the incidents that lead to her suspension and to develop an appropriate treatment plan. Pepperdine's instructions to Plaintiff specifically provided that the assessment was to take into account the "precipitating events." The assessment that Plaintiff has provided to date does not address the precipitating events and does not acknowledge or explain why Plaintiff's perceptions of public events differs significantly from

1  other observers.  (Fitzpatrick Decl., ¶ 5.)  Thus, at this time, Pepperdine has not
2  cleared Plaintiff to return.
3        Plaintiff has provided no evidence that Pepperdine's decision is causally
4  connected to a protected activity, as opposed to a rationale response to Plaintiff's
5  perplexing assertions and her provider's failure to address or acknowledge the
6  events precipitating her suspension.  Because Plaintiff's provider has not adequately
7  addressed the issues that may have led to Plaintiff's suspension, Pepperdine does not
8  believe that it is safe to return her to the community.  (Fitzpatrick Decl., ¶ 12.)  At
9  this juncture, Pepperdine's judgment that Plaintiff has not met the requirements to
10 return should be accorded deference. *See, e.g., C.R. v. Eugene School District 4J*,
11 835 F.3d 1142, 1148 (9th Cir. 2016) ("courts owe significant deference to a school's
12 interpretation of its own rules and policies. We uphold a school's disciplinary
13 determinations so long as the school's interpretation of its rules and policies is
14 reasonable, and there is evidence to support the charge."); *Havlik v. Johnson &*
15 *Wales University*, 509 F.3d 25, 35 (5th Cir. 2007) ("courts must accord a school
16 some measure of deference in matters of discipline."); *Doe v. St. Francis Sch. Dist.*,
17 694 F.3d 869, 873 (7th Cir. 2012) ("Judges must be sensitive to the effects on
18 education of heavy-handed judicial intrusion into school disciplinary issues.");
19 *Schaer v. Brandeis University*, 432 Mass. 474, 481 (2000) (in student disciplinary
20 matters, "[i]t is not the business of lawyers and judges to tell universities what
21 statements they may consider and what statements they must reject.").
22        2.    *Plaintiff Did Not Establish a Likelihood of Irreparable Harm.*
23        Plaintiff contends that she would suffer irreparable harm without a
24 preliminary injunction because she will be delayed in completing her legal degree
25 and therefore delayed in entering her chosen field.  However, Plaintiff failed to
26 provide any evidence that she is unable to complete a legal degree at a different law
27 school.  Indeed, if it were true, as Plaintiff alleges, that multiple Pepperdine faculty
28

members, employees, and students harassed her, it stands to reason that she would have applied to transfer to another law school, rather than seek to reenter the Pepperdine community. Yet, despite being suspended since February 2024, her declaration and memorandum of points and authorities do not state that she has attempted to, but been unable to, continue her education at another law school.

### 3. *The Balance of the Equities Does Not Favor an Injunction.*

The balance of the equities does not favor an injunction in this matter. While Plaintiff argues the equities favor her, her argument is premised on her assertion that she has been retaliated against for engaging a protected activity. Plaintiff's assertions are not supported by the facts.

In contrast, an injunction requiring Pepperdine to prematurely readmit Plaintiff into its community would harm Pepperdine. It would interfere with its ability to regulate its student body and ensure the safety of its community. Plaintiff engaged in disruptive, and, frankly, bizarre behavior prior to her suspension. Based on the limited assessment submitted by her medical provider, it does not appear that she has addressed the issues that precipitated her suspension. Thus, requiring Pepperdine to return her to its community is likely to allow continued disruptions to the learning environment.

### 4. *The Public Would Not Benefit from an Injunction.*

The "public interest" inquiry "mostly concerns the injunction's impact on non-parties rather than parties." *Porretti v. Dzurenda*, 11 F.4th 1037, 1050 (9th Cir. 2021) (quotations omitted). Plaintiff failed to address this element in her memorandum of points and authorities. Here, an injunction is likely to have a significant negative impact on non-parties. Prior to her suspension and in this lawsuit, Plaintiff has made numerous specious allegations regarding non-party Pepperdine faculty, staff, administrators, and students. If the Court were to order Pepperdine to allow her to return to classes before Plaintiff has fully addressed the

mental health issues that are impacting her perceptions, there is a significant risk that her behavior would escalate and negatively impact the third parties in Pepperdine's community.

## IV. CONCLUSION.

For the foregoing reasons, Pepperdine respectfully requests that the Court deny Plaintiff's *ex parte* application.

DATED: January 14, 2025    KAREN J. PAZZANI
PAZZANI & SANDHU LLP

By: /s/ Karen J. Pazzani
KAREN J. PAZZANI
Attorneys for Defendant
PEPPERDINE UNIVERSITY

The undersigned, counsel of record for Defendant, certifies that this brief contains 3,203 words, which complies with the word limit of L.R. 11-6.1.

DATED: January 14, 2025

By: /s/ Karen J. Pazzani
KAREN J. PAZZANI