KAREN J. PAZZANI (State Bar No. 252133)
kpazzani@psemploymentlaw.com
PUNEET K. SANDHU (State Bar No. 254726)
psandhu@psemploymentlaw.com
JOSEPH V. MARRA III (State Bar No. 238181)
jmarra@psemploymentlaw.com
PAZZANI & SANDHU LLP
700 N. Central Avenue, Suite 460
Glendale, CA 91203
Telephone:(213) 362-1860
Facsimile: (213) 362-1861

Attorneys for Defendant
PEPPERDINE UNIVERSITY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIRA HOWELL,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>PEPPERDINE UNIVERSITY,<br><br>　　　　Defendant. | Case No. 2:24-CV-06332-WLH-RAO<br><br>**PEPPERDINE UNIVERSITY'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND [DKT # 56]**<br><br>Date: February 14, 2025<br>Time: 1:30 pm<br>Place: First Street Courthouse<br>350 West 1st St, Courtroom 9B<br>Los Angeles, California |

1

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND

# TABLE OF CONTENTS

I. INTRODUCTION AND SUMMARY OF ARGUMENT ..........................5

II. PROCEDURAL HISTORY ................................................................5

III. STATEMENT OF FACTS..................................................................6

IV. LEGAL ARGUMENT .......................................................................8

    A. Plaintiff Inexcusably Delayed Requesting Leave to Amend to Add A Defamation Claim Regarding the February 27, 2024 Findings and Sanction Letter. ................................................................8

    B. Allowing Leave to Amend Would be Futile. ...................................9

        1. Proposed Claim X Would Not Survive a Motion to Dismiss ................................................................................9

        2. Proposed Claim XI Would Not Survive a Motion to Dismiss ..............................................................................13

    C. Plaintiff's Request to Name Pepperdine Employees as Defendants Should be Denied. ..............................................................14

V. CONCLUSION. ..............................................................................15

# TABLE OF AUTHORITIES

**State Cases**

*Scott v. McDonnell Douglas Corp.*,
   37 Cal. App. 3d 277 (1974) ............................................................................. 9

*Cabesuela v. Browning-Ferris Indus. of Cal., Inc.*,
   68 Cal. App. 4th 101 (1998) ............................................................................ 9

*Inst. of Athletic Motivation v. Univ. of Illinois*,
   114 Cal. App. 3d 1 (1980) ........................................................................ 10, 13

*Summit Bank v. Rogers*,
   206 Cal. App. 4th 669 (2012) ........................................................................ 11

*Taus v. Loftus*,
   40 Cal. 4th 683 (2007) ..................................................................................... 9

**Federal Cases**

*Carrico v. City & County of San Francisco*,
   656 F.3d 1002 (9th Cir. 2011) ......................................................................... 9

*Issaenko v. University of Minnesota*,
   57 F. Supp. 3d 985 (D. Minn. 2014) ........................................................ 13, 14

*Kacludis v. GTE Sprint Commc'ns Corp.*,
   806 F. Supp. 866 (1992) ........................................................................... 10, 13

*Karimi v. Golden Gate School of Law,*
   361 F.Supp.3d 956 (N.D. Cal. 2019) ........................................................ 10, 13

*Mahoney v. Meta Platforms, Inc.,*
   710 F.Supp.3d 771 (N.D. Cal. 2024) ............................................................. 12

*O'Hara v. Teamsters Union Loc. No. 856*,
   151 F.3d 1152 (9th Cir. 1998) ....................................................................... 15

*Palmisano v. Allina Health Sys., Inc.,*
   190 F.3d 881 (8th Cir.1999) .......................................................................... 14

*Rich v. Shrader,*
   823 F.3d 1205 (9th Cir. 2016) ......................................................................... 8

*Ybarra v. Walmart, Inc.* (D. Nev.,
   Nov. 20, 2023, No. 223CV00639GMNEJY) 2023 WL 9067759 .................. 15

**Statutes**

Cal Civ. Code § 45 ................................................................................................... 9

Cal Civ. Code § 46 ................................................................................................... 9

Cal. Civ. Code § 47(c) ...................................................................................... 10, 13

California Education Code § 66270 ........................................................................ 6

**Treatises**

5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts § 529 ................................. 9

Prosser & Keeton, Torts (5th ed. 1984) ................................................................... 9

**PAZZANI & SANDHU LLP**
700 N. CENTRAL AVENUE, SUITE 460
GLENDALE, CALIFORNIA 91203

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff Kira Howell seeks leave to add two individual defendants and two claims for defamation to her complaint. Her first proposed new claim purports to assert a defamation claim against Defendant Pepperdine University ("Pepperdine") and its Dean of Students, Sharon Beard, for statements made in a February 27, 2024, private letter advising Plaintiff that the Student Disciplinary Committee had found Plaintiff responsible for violating Pepperdine's Code of Conduct. The second proposed claim attempts to assert a defamation claim against Pepperdine's Associate Dean for Academic Affairs, Jason Jarvis, for emails that he sent to other Pepperdine employees describing Plaintiff's unusual behavior and accusations while enrolled at Pepperdine.

The Court should deny Plaintiff's request for leave to amend. First, Plaintiff unduly delayed seeking leave to amend to add a claim regarding the February 27, 2024, findings and sanction letter. The letter has been in her possession since February 27, 2024, and she did not include a defamation claim in the three prior iterations of her complaint. Second, Plaintiff's proposed new claims are frivolous; thus, allowing leave to amend would be futile. Finally, even if leave to amend were appropriate, Plaintiff's request to add Pepperdine employees as individual defendants should be denied. The employees' statements were made in the course and scope of their employment; therefore, to the extent that any potential claim could be stated, it is against Pepperdine, not individuals.

### II. PROCEDURAL HISTORY

Plaintiff initiated this action on July 24, 2024, by filing a Complaint against Pepperdine alleging (1) Title IX Discrimination – Quid Pro Quo and Deliberate Indifference to Stipanowich's Discrimination; (2) Title IX Discrimination –

Deliberate Indifference to Pervasive Discrimination, Stalking, and Protected Opposition to Sexual Harassment; (3) Title IX Retaliation – Discipline for Reporting Sex Based Discrimination from McDonald; (4) Title IX Retaliation – Discipline for Opposing and Report Sex-Based Discrimination from Joyce; (5) Title IX Retaliation – Discipline for Reporting Proctor; (6) Title IX Retaliation – Discipline for Engaging in Protected Activity Against Williams; (7) Unruh Civil Rights Act Violation; (8) California Education Code § 66270 Violation; and (9) Intentional Infliction of Emotional Distress. (Dkt # 1.) On August 7, 2024, Plaintiff filed a First Amended Complaint asserting the same claims but adding allegations. (Dkt # 16.)

Thereafter, on October 2, 2024, the parties entered into a joint stipulation allowing Plaintiff to file the currently operative Second Amended Complaint. (Dkt # 28.) The Second Amended Complaint contains 271 separate paragraphs. It removed the Unruh Civil Rights Act claim, and added claims under California's Ralph and Bane Acts. (Dkt # 38.) Pepperdine filed an answer on October 29, 2024 and an amended answer on November 8, 2024. (Dkt # 37, 40.)

The parties have submitted a Joint Rule 26(f) Report (Dkt # 42), have exchanged initial disclosures, and propounded written discovery. Trial is set for January 5, 2026. (Dkt # 44.)

### III. STATEMENT OF FACTS

Plaintiff was enrolled as a law student at Pepperdine's Caruso School of Law ("CSOL") from summer 2023 to spring 2024. During that time, she exhibited erratic behavior towards her classmates and the CSOL faculty. Plaintiff falsely accused several professors, staff and students of serious misconduct that simply never occurred. Plaintiff was never able to provide any supporting witnesses or documentation to substantiate her claims (despite many of the alleged events occurring in front of dozens of students).

Plaintiff's Second Amended Complaint repeats many of the false, bizarre allegations she made during her enrollment at Pepperdine, and continues to add to her incredible conspiracy theories, including that multiple Pepperdine faculty members and students gave her the middle finger during classes (Dkt. # 38, Second Amended Complaint ("SAC") ¶¶ 32, 143, 147), kicked at her during classes and speeches (SAC ¶¶ 32, 40, 52, 54, 55, 246, 254) made undescribed "homophobic gestures" at her and others during classes (SAC ¶¶ 39, 51, 55, 61, 68, 73, 74, 96, 113, 200, 202, 205, 235), made gun signals with their hands during class (SAC ¶¶ 36, 39, 61, 77), and made vague, allegedly discriminatory comments to and about her. (SAC ¶ 260.) Plaintiff's allegations are baseless, and, indeed, on their face, lack credibility.

In reality, Plaintiff's own odd behavior caused many Pepperdine faculty to believe that she was exhibiting symptoms of mental illness. Thus, Pepperdine offered her support resources on several occasions. (Dkt. # 57-2 Proposed Third Amended Complaint, ¶¶ 32, 88, 190, 193.) Plaintiff rebuffed those resources. By February 2024, Plaintiff's false accusations and erratic behavior had so disturbed the community that Plaintiff was called to a hearing before the Pepperdine's Student Disciplinary Committee. Plaintiff was found responsible for violations of Pepperdine's Standards of Conduct (for disruption or obstruction of teaching, research, administration, or other University activities, and for dishonesty). (Dkt # 52-3, Beard Decl. ¶ 2 & Exh. A.) The Student Disciplinary Committee found that she falsely accused the Director of Career Center of making disparaging, misleading, and untrue comments; that she falsely accused a proctor of heckling female students during a midterm; and that she falsely accused several faculty members of making derogatory and harassing comments about her. (*Id.*) Of note, many of purported instances of harassing behavior that Plaintiff claimed were directed at her occurred in large lectures, in front of numerous witnesses, yet

Plaintiff was unable to identify any witnesses who could corroborate her assertions—and all of the students that Pepperdine contacted denied that any harassing conduct occurred. Pepperdine students also reported that Plaintiff's behavior during classes disrupted the learning environment and caused them to be concerned for their safety.

Following the Student Disciplinary Committee hearing, Plaintiff was suspended from Pepperdine from February 27, 2024 through January 1, 2025. As noted in the Order Denying Plaintiff's *Ex Parte* Application for a Preliminary Injunction, Plaintiff failed to meet conditions set for her return; thus, she remains suspended. (Dkt # 55.)

## IV. LEGAL ARGUMENT

### A. Plaintiff Inexcusably Delayed Requesting Leave to Amend to Add A Defamation Claim Regarding the February 27, 2024 Findings and Sanction Letter.

As an initial matter, Plaintiff unduly delayed requesting leave to amend to add Claim X, related to the February 27, 2024, findings and sanction letter. The letter was sent to Plaintiff on February 27, 2024. (Dkt # 52-3.) Thus, Plaintiff has been aware of all of the statements that she claims give rise to a defamation cause of action since she initiated this matter six months ago, on July 24, 2024. She has already amended her complaint twice, once as a matter of right and then once pursuant to a joint stipulation. She did not include a defamation claim in any of the three prior iterations of the complaint. Plaintiff's unexplained, unexcused six-month delay in seeking to add a defamation claim based on statements she already knew about when her original complaint was filed, is grounds alone to deny leave to amend. *See Rich v. Shrader,* 823 F.3d 1205, 1209-1210 (9th Cir. 2016) (affirming denial of leave to amend where, among other things, plaintiff had been afforded prior opportunities to amend the complaint and "has known all of the underlying

facts and theories he now wishes to allege since the commencement of the litigation.").

### B. Allowing Leave to Amend Would be Futile.

Leave to amend is properly denied where the proposed amendment is futile or would be subject to dismissal. *See Carrico v. City & County of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011). Neither of Plaintiff's proposed defamation claims would survive a Rule 12(b)(6) motion, rendering her proposed amendment futile.

To plead a claim for defamation under California law, a plaintiff must allege facts that the defendant made "(a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage." *Taus v. Loftus*, 40 Cal. 4th 683, 720 (2007) (citing 5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts § 529, p. 782); Cal Civ. Code § 45-46. Both of Plaintiff's proposed new claims suffer from numerous independently fatal deficiencies.

#### 1. Proposed Claim X Would Not Survive a Motion to Dismiss.

Plaintiff's proposed Claim X would not survive a motion to dismiss for several reasons. First, and most significantly, Plaintiff's proposed Third Amended Complaint fails to allege that the February 27, 2024 findings and sanction letter itself was *published* to any third party. In fact, Plaintiff acknowledges that this letter was *not published*, and wishes to continue to keep it private—therefore the letter is among the documents included in her Application to Seal filed with this Court on January 10, 2025 (Dkt. # 58-2, ¶ 45). "It is axiomatic that for defamatory matter to be actionable, it must be communicated, or 'published,' intentionally or negligently, to 'one other than the person defamed.'" *Cabesuela v. Browning-Ferris Indus. of Cal., Inc.*, 68 Cal. App. 4th 101, 112 (1998) (quoting Prosser & Keeton, Torts (5th ed. 1984) § 113, pp. 797–798) (emphasis added); *Scott v. McDonnell Douglas Corp.*, 37 Cal. App. 3d 277, 291 (1974) (holding that where "the complaint fails to

allege that these statements were ever published or made known to any third person," there was no publication and therefore no claim for defamation).

Even if Plaintiff were to attempt to cure this deficiency by arguing that the letter— which was addressed and sent to her—was also sent to a handful of Pepperdine employees and administrators, this would not save her claim. To the extent the February 27, 2024, sanction letter was shared with any Pepperdine employees, that communication was privileged. *See* Cal. Civ. Code § 47(c) ("A privileged communication is one made: … In a communication, without malice, to a person interested therein [] by one who is also interested."); *Karimi v. Golden Gate School of Law,* 361 F.Supp.3d 956, 979(N.D. Cal. 2019), aff'd (9th Cir. 2020) 796 Fed.Appx. 462 (law school's communication to the law school community, including students, regarding a student who displayed behavior issues was privileged because the community had a common interest in the information); *Kacludis v. GTE Sprint Commc'ns Corp.*, 806 F. Supp. 866, 872 (1992) ("As it is apparent from the face of the complaint that Malik and the other managers at Sprint were interested parties, the communication is presumed to be privileged absent pleading of specific facts to defeat that privilege."); *Inst. of Athletic Motivation v. Univ. of Illinois*, 114 Cal. App. 3d 1, 7 (1980) (surveying cases under California Civil Code section 47(c), showing that the privilege has been broadly applied, including to defamation claims made regarding statements (1) to a principal about a teacher and (2) by an employer to employees about another employee's termination, among others).

Finally, none of the statements that Plaintiff cherry-picked from within the February 27, 2024, findings and sanction letter would give rise to a defamation claim, even if it were published and unprivileged.

        a.      *Statements of Opinion are not Defamation*

Plaintiff alleges the following statements were defamatory:

(1) "Alexis only communicated via email with you, and the Committee reviewed those emails."

(2) "You reported to Dean Chalak that you 'reconciled' with Alexis."

(3) "You failed to offer any credible evidence that Alexis said or did anything inappropriate."

These are statements of the Student Disciplinary Committee's opinion following their review of the evidence. *Summit Bank v. Rogers*, 206 Cal. App. 4th 669, 695–696 (2012) ("Because the statement must contain a provable falsehood, courts distinguish between statements of fact and statements of opinion for purposes of defamation liability. Although statements of fact may be actionable as libel, statements of opinion are constitutionally protected."). In any event, they have no natural tendency to injure Plaintiff.

      b.  *Statements Not "Of And About" Plaintiff are not Defamation*

Plaintiff also alleges the following statements were defamatory:

(1) "Stacy forwarded your email to Associate Dean Jason Jarvis, and Associate Dean Jarvis contacted multiple students to investigate the matter. Each student reported that the proctor acted professionally."

(2) "Associate Dean Jarvis contacted multiple students to investigate the matter. Each student reported that the proctor acted professionally . . . I contacted [student name] and she reported that the proctor acted professionally."

(3) "The University directly contacted multiple students, they all denied that the behaviors occurred."

(4) "You gave me the name of a student named [student name], who you allege complimented your eyes after the incident where allegedly professor McDonald called you ugly."

(5) "It was reported that Professor McDonald was 'visibly distressed.'"

11
DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND

These statements do not constitute defamation because they are not "of and concerning" Plaintiff. *See Mahoney v. Meta Platforms, Inc.,* 710 F.Supp.3d 771, 778 (N.D. Cal. 2024) ("To state a defamation claim, the statement on "which the claim is based must specifically refer to, or be 'of and concerning,' the plaintiff in some way.") Statements one through four are truthful statements regarding the actions Pepperdine took to investigate various allegations made by Plaintiff and the responses that Pepperdine received. At best, these are statements about the accused proctor and other students, not statements about Plaintiff. The fifth is a truthful statement about what was reported to Pepperdine regarding Professor McDonald. Indeed, Plaintiff does not allege the statement was false; just that she does not believe that she caused his distress.

    c.  *Statements Whose Truth is Not Challenged are Not Defamation*

Plaintiff also alleged that certain statements whose truth she did not challenge are defamation. She included the following statement in Claim X: "After the first incident with Professor Goodno, you emailed and apologized 'if my behavior was argumentative.'" However, Plaintiff does not allege that this statement is false, i.e, that she did not email Professor Goodno and state that she apologized "if [her] behavior was argumentative. She simply disputes that her behavior was argumentative. In any event, this statement has no natural tendency to injure Plaintiff.

Plaintiff also included the following in Claim X: "Professor Williams indicated that you were disruptive in her class." However, again, Plaintiff does not allege this statement is false. Rather, she alleges that Professor Williams' statement to Pepperdine included the additional fact that Plaintiff was awarded all professionalism points. That does not render Pepperdine's summary of additional facts that Professor Williams reported false.

12
DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND

Finally, Plaintiff included the following statement in Claim X: "You indicated that these incidents in both professor McDonald and Professor Goodno's class occurred in front of the class, yet no one other than yourself reported these behaviors." However, Plaintiff cannot allege this statement is false. Indeed, she alleges that she "endured numerous negative and aggressive public behaviors from Goodno" and that Professor Goodno made certain comments in the front of the classroom. (Proposed TAC ¶ 273 e(i)(2), h(i)(2).)

### 2. Proposed Claim XI Would Not Survive a Motion to Dismiss.

Neither would Plaintiff's proposed Claim XI survive a motion to dismiss. Plaintiff failed to state that many of the alleged statements were published to a third-party. (Dkt. # 57-2 (Proposed TAC) ¶ 281.)

Even if Plaintiff were to attempt to cure this deficiency, the communications at issue were all privileged; that is, they were made to individuals with a common interest in the information regarding the complaints that Plaintiff was making and the odd behavior she exhibited. In Paragraph 281, Plaintiff identified the recipient of only one email, stating that it was sent to Camila Bonavia. (Id. ¶ 281(e).) Ms. Bonavia is part of Pepperdine's Threat Assessment Team. Thus, communications to her regarding Plaintiff's concerning behavior are protected by the common interest privilege. *See Karimi,* 361 F.Supp.3d at 979 (law school's communication to community regarding student with behavioral issues was privileged); *Kacludis*, 806 F. Supp. at 872 (manager's communications about employee privileged); *Inst. of Athletic Motivation v. Univ. of Illinois*, 114 Cal. App. 3d at 7 (surveying cases under California Civil Code section 47(c), showing that the privilege has been broadly applied, including to defamation claims made regarding statements (1) to a principal about a teacher and (2) by an employer to employees about another employee's termination, among others).

*Issaenko v. University of Minnesota*, 57 F. Supp. 3d 985, 997 (D. Minn. 2014)

involved similar defamation claims and may be persuasive here.  In *Issaenko*, the plaintiff sued a university and a series of related individuals for numerous claims, including a defamation claim arising out a misconduct investigation.  57 F. Supp. 3d 985, 997 (D. Minn. 2014). Reviewing underlying state and circuit law similar to the California law at issue here, the District Court denied leave to add certain defamation claims based in relevant part on the privilege afforded communications by university employees in the course of a misconduct investigation.  *See id*. at 1034 (citing *Palmisano v. Allina Health Sys., Inc.,* 190 F.3d 881, 885 (8th Cir.1999))

Finally, as with Claim X, even if the statements at issue were published and unprivileged, they would not give rise to a defamation claim.  They are all statements of opinion, or are true, and/or have no natural tendency to injure Plaintiff.  For example, Plaintiff alleged that the following statement is defamatory: *"*Later, she claimed a student had stolen her textbook and defaced it (when we looked at it, it was actually just notes on the material and we suspect she wrote it herself and just forgot/couldn't remember through her dementia)."  However, Plaintiff does not dispute that she reported that her textbook was defaced and the remainder of the statement represents opinion based on review of the notes.

Plaintiff also alleged that the following is defamatory: "She has previously been referred to Dawn Emrich, Brittney Brannon, and LaShonda Coleman, for making claims of harassment."  This is a true statement and has no natural tendency to injure Plaintiff.

C. **Plaintiff's Request to Name Pepperdine Employees as Defendants Should be Denied.**

Even if Plaintiff could amend her complaint to state a defamation claim based on the statements identified in the Proposed TAC, which, as discussed above, she cannot, her request to add Pepperdine employees as individual defendants should be denied.  Pepperdine does not intend to dispute that the statements identified in the

Proposed TAC were made in the course and scope of Sharon Beard's and Jason Jarvis' employment with Pepperdine. As such, to the extent any liability could be attached to the statements, Pepperdine would be liable under the doctrine of respondeat superior. *See O'Hara v. Teamsters Union Loc. No. 856*, 151 F.3d 1152, 1157 (9th Cir. 1998) ("[A] broad definition of 'within the scope of employment' ensures that third parties injured by an employee have a remedy against a party that is more likely to be able to pay a judgment—i.e., employers—under the theory of respondeat superior.") Sharon Beard and Jason Jarvis are therefore not necessary parties whose absence would prevent Plaintiff from obtaining relief. *See Ybarra v. Walmart, Inc.* (D. Nev., Nov. 20, 2023, No. 223CV00639GMNEJY) 2023 WL 9067759, at *4, report and recommendation adopted (D. Nev., Dec. 29, 2023, No. 223CV00639GMNEJY) 2023 WL 9017158. Given this doctrine and the fact that Jarvis and Beard will continue to participate in the action as witnesses, there is no justification for naming them as individual defendants and threatening them with personal liability for doing their jobs. Further under the circumstances, Plaintiff's attempt to name these individuals personally, just after her *ex parte* application for a preliminary injunction was denied, appears intended to retaliate against and harass Jarvis and Beard.

## V.  CONCLUSION.

For the foregoing reasons, Pepperdine respectfully requests that the Court deny Plaintiff's motion for leave to amend.

DATED:  January 24, 2025         KAREN J. PAZZANI
                                 PAZZANI & SANDHU LLP


                                 By:  /s/ Karen J. Pazzani
                                      KAREN J. PAZZANI
                                      Attorneys for Defendant
                                      PEPPERDINE UNIVERSITY

The undersigned, counsel of record for Defendant, certifies that this brief contains 3,230 words, which complies with the word limit of L.R. 11-6.1.

DATED:  January 24, 2025

By:    /s/ Karen J. Pazzani
        KAREN J. PAZZANI