1  Kira Howell
2  Kira.howell8@yahoo.com
3  ███████████████
4  Calabasas, CA 91302
5  ███████████
6  Plaintiff in Pro Per
7
8
9              UNITED STATES DISTRICT COURT
10            CENTRAL DISTRICT OF CALIFORNIA
11

| | |
|---|---|
| 12 KIRA HOWELL, | Case No.: 2:24-CV-06332-WLH-RAO |
| 13　　　　　　Plaintiff, | **PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT** |
| 14　　v. | |
| 15 PEPPERDINE UNIVERSITY, | |
| 16　　　　　　Defendant. | **Hearing Date: February 14, 2025** |
| 17 | **Hearing Time: 1:30 PM** |
| 18 | |
| 19 | **Judge: Hon. Wesley L. Hsu** |
| 20 | **Place: Courtroom 9B** |

21
22
23
24
25
26
27
28

                           i
PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO MOT. TO AMEND SAC

# **<u>TABLE OF CONTENTS</u>**

**Page**

I.    Introduction……………………………………………………………… 1

II.   Analysis

    a. Plaintiff's Purported "Delay" Is Due Solely To Defendant's
      Undisclosed Record And Plaintiff Had No Previous Opportunity To
      File Defamation Counts Against Parties Until
      Now…………………………………………………………………..2

    b. Leave To Amend Is Absolutely Not Futile.……..…………………….3

        1. Defamation Counts Would Survive Rule 12(b)(6) Motion To
           Dismiss. ……………………………………………...………3

        2. Count X Against University And Sharon Beard Contains
           Numerous Declaratory Statements Disproven In The Written
           Record And The Record Also Clearly Indicates Malice Due To
           Their Dishonest, Nonsensical Nature. ………..…………..……4

        3. Count XI Against Jason Jarvis Includes Clearly Malicious
           Intent If For No Other Reason Than His Statements Are
           Patently False. ………………………………………………9

    c. Courts Find School Employees Liable For Defamation For Spreading
      Lies And Other Inflammatory Statements While Conducting Sex
      Discrimination Investigations…………………………………………..10

    d. Adding Jarvis And Beard Is Not Retaliation Or Harassment…………..10

III.  Conclusion …………………………………………………......11

IV.  Certificate Of Compliance …………………………………………..13

V.   Proof of Service …………………………………………………......14

PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO MOT. TO AMEND SAC

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                    **Page(s)**

*Ashcroft v. Iqbal*,

    556 U.S. 662 (S.Ct. 2009) ......................................................................4

*Axelbank v. Rony*,

    277 F.2d 314 (9th Cir. 1960) ...............................................................9

*Bell Atlantic Corp. v. Twombly*,

    550 U.S. 544 (S.Ct. 2007) ......................................................................4

*Berger v. Harley Ellis Devereaux*,

    2008 WL 10610129 (C.D. Cal.) ...........................................................7

*Bowles v. Constellation Brands, Inc.*,

    444 F.Supp.3d 1161 (E.D. Cal. 2020) ..................................................3

*Ilitzky v. Goodman*,

    57 Ariz. 216 (1941) ................................................................................5

*Mahoney v. Meta Platforms, Inc.*,

    710 F.Supp.3d 771 (N.D. Cal. 2024) ...................................................8

*McAndie v. Sequim Sch. Dist.*,

    3:21-cv-05227-JHC (W.D. Wash. Mar. 3, 2023)...............................10

*McGarry v. Univ. of San Diego*,

    154 Cal.App.4th 97 (2007)................................................................5, 6

*Morongo Band of Mission Indians v. Rose*,

893 F.2d 1074 (9th Cir. 1990)..................................................2,6,10

iii

PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO MOT. TO AMEND SAC

*Ruggeroli v. Residential Real Estate Council,*

 2024 WL 4203156 (D. Ariz. Sept. 16, 2024) .................................................4, 5

*Thomsen v. Georgia-Pacific Corrugated, LLC,*

 190 F.Supp.3d 959 (E.D. Cal. 2016) ........................................................9

**Federal Statute**

20 U.S.C. § 1681 ……………………………………………………11

**State Statutes**

Cal. Civ. Code § 46 ……………………………………………………11

Cal. Civ. Code § 51.7 ……………………………………………………11

Cal. Civ. Code § 52.1 …………………………………………….....11

Cal. Educ. Code § 66270 ……………………………………….....11

**Rules**

Fed. Rule Civ. P. 12(b)(6) ……………………………………....……3,9

Fed. Rule Civ. P. 15(a)(2) …………………………………………….3

Fed. Rule Civ. P. 15(c)(1) …………………………………………….3

Fed. Rule Civ. P. 15(c)(1)(C) …………………………………………….3

**Supplementals**

CACI 1705 …………………………………………….…….4

CACI 1723 …………………………………………….…...4

Corpus Juris Secundum §226……………………………………....…………9

D. Dobbs, Law of Remedies § 7.2, at 512–513 ………………………....…………4

PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO MOT. TO AMEND SAC

**Reply Memorandum Of Points and Authorities**

## I.    Introduction

Here we go again. Defendant's Opposition Brief again relies on name-calling, insulting, outright lying, and promise of as-yet undisclosed and unsubstantiated anonymous students. First and foremost, Plaintiff advances no conspiracy theory.    The written record establishing Title IX retaliation and now defamation is clear and straightforward.  Plaintiff does not think the entire campus was against her, but if they were, it suggests not to discredit her claims merely because no one cared they occurred.  If anything, and as one female student stated in class in response to the profound, overt hate and discrimination, "let's be honest, we all know this is happening [to you] but this is how we all get ahead." Decl. at ¶ 2. The witnesses are largely named in the complaint. It is not even the indifference that remains, as no one has been questioned as of today.  Not a single person has refuted the claims, but Defendant relies on doggedly repeating mantras to the contrary and without ever producing any relevant evidence.

Plaintiff is a professional woman on her second career who had her own life and own priorities.  This was thrust on her by the University who now depends on ambiguity and propagandist statements to discredit her.  Except as cited below for the defamation counts attributed to direct statements, Defendant is very careful not to ever use direct quotes to refute Plaintiff's statements and allegations.  It is all vague conjecture stated over and over until it appears to be factual.

Further, it is not "odd" to report criminal actions, threatening behaviors, and other sexually harassing statements and actions.  Again, this is an attempt to blame the victim for reporting events, many of which she was required to report. And the law protects her from harm for doing so, something the Defendant ignored.  She reported threats, Defendant got angry and sought retribution.  PEP000547-49; PEP000575.  She reported vandalism to her property, Defendant sought revenge.    KH000118; KH000121; PEP000575.  She reported in-class abuse, and University sought retaliation.  PEP000547-49; PEP000575.

1

PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO MOT. TO AMEND SAC

Saying this responsible reporting is "odd" is companion to stating that abiding by the laws contained herein is silly. It is offensive on its face.

Kicking at someone is assaultive and harassing. It is threatening. It is unwanted. And it did, in fact, occur as Plaintiff reported. There has been no refutation of this. It is a truthful accounting to show the Court what occurred, but these instances are not themselves necessary to establish any of the counts. Any statements or even video of these kicking events would not balance heavily in either direction at summary judgment because they are largely immaterial.

There is never a direct statement of fact showing Plaintiff ever did anything wrong. She is a middle-aged woman who was so busy achieving her goals that she had no cause or time to disrupt anyone or anything. A college professor prior to matriculating at CSOL, she denies her character or demeanor to be imposing in any way. She was sitting silently in a class of students who largely did not share her goals or interests, her age and sex were used as a cudgel, and she was made the target of daily negative attention and abuse, all of which intersected the school's apparent dogma against certain classes of people, namely women and the LGBT+ community. Plaintiff remains an ally. She was threatened, assaulted, and her property was vandalized while making overt statements like "how about this gay." More importantly, Defendant never offers a single detail or piece of evidence to substantiate the false assertion that she ever did anything wrong. In fact, it now asserts emphatically that it *wasn't ever even saying* she did something wrong. Over and over again, Defendant's positions prove spurious.

II.    **Analysis**
   A. **Plaintiff's Purported "Delay" Is Due Solely To Defendant's Undisclosed Record And Plaintiff Had No Previous Opportunity To File Defamation Counts Against Parties Until Now.**

The Ninth Circuit uses extreme liberality when allowing amendment to the complaint "when justice so requires." *Morongo Band of Mission Indians v. Rose*, 893 F.2d

2

PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO MOT. TO AMEND SAC

1074, 1079 (9th Cir. 1990); Fed. R. Civ. Pro. 15(a)(2).  Adding to this sentiment is Plaintiff's intent to amend as soon as she received evidence of the defamatory statements. Plaintiff had the letter in her purview and knew the statements and actions were false for various reasons, but she waited until there was definitive proof of malfeasance supporting defamation before pursuing amendment.  And she did not know at all that Jarvis had defamed her behind her back for months and in vitriolic, hateful ways.  Waiting until now to amend is sound judgment.  And it occurs within the bounds of the law on all new counts. Fed. R. Civ. P. 15(c)(1)(A)(B) ("an amendment relates back to the date of the original pleading when [] the law that provides the applicable statute of limitations allows" and amendment asserts a "defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading"); Fed. R. Civ. Pro. 15(c)(1)(C)(ii) (amendment relates back when "the party to be brought in by amendment "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity").  Count XI contains one email dated February 1, 2024 and a few dated February 7, 2024.  This was not reasonably known to Plaintiff until December 4, 2024, and initial complaint was filed on July 24, 2024.

For these reasons, Plaintiff respectfully asks the Court grant her leave to amend to add defamation counts against University, Sharon Beard, and Jason Jarvis.

**B. Leave To Amend Is Absolutely Not Futile.**

**1. Defamation Counts Would Survive Rule 12(b)(6) Motion To Dismiss.**

Defendant argues that the defamation counts would not survive a Rule 12(b)(6) Motion to Dismiss because the letter and emails containing the false statements were not published and they were privileged. There is no question the letter and all emails from Jason Jarvis were published.  All materials were sent to multiple parties who are almost all named in the TAC.  A publication is a written or verbalized statement to a third party who understands the nature of the statement and that it is about Plaintiff.  *Bowles v. Constellation Brands, Inc.*, 444 F.Supp.3d 1161, 1172-3 (E.D. Cal. 2020).

3

PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO MOT. TO AMEND SAC

Courts categorize privileged communications as either absolute or conditional. To dismiss a defamation claim under Rule 12(b)(6), the defamatory statements must all be absolutely privileged.  If the person making the alleged defamatory statement acts with malice and on mere conditional privilege, the court must not dismiss the claim at the pleading stage. Determining common interest privilege is a matter for the trier of fact and requires Plaintiff be allowed to show Defendant acted with "hatred or ill will" and with "willingness to vex, annoy, or injure Plaintiff," or simply because Defendant "had no reasonable grounds for believing the truth of the statements." CACI 1723.  These particular assertions are well pleaded in the TAC.  For now, it is enough to read the vitriolic, disproven emails and assert Plaintiff has met pleading standards per *Ashcraft v. Iqbal* and *Bell Atlantic Corp. v Twombly*.  556 U.S. 662 (S.Ct. 2008); 550 U.S. 544 (S.Ct. 2007). Accordingly, Plaintiff respectfully asks the Court grant her leave to amend.

    **2.  Count X Against University And Sharon Beard Contains Numerous Declaratory Statements Disproven In The Written Record And The Record Also Clearly Indicates Malice Due To Their Dishonest, Nonsensical Nature.**

Defamation per quod is assumed when defamation per se is not established through the record.  Defamation per quod allows that "because of the facts and circumstances known to the reader, they tended to injure her in her occupation or expose her to hatred, contempt, ridicule, or shame." CACI 1705.  Because of the facts and circumstances, all of the below quoted statements provide support for and establish defamation contained in the letter.  *See Ruggeroli v. Residential Real Estate Council*, 2024 WL 4203156, *6 (D. Ariz. Sept. 16, 2024) (citing *Ilitzky v. Goodman*, 57 Ariz. 216, 220-21 (1941) "explaining that 'X murdered Y' would be defamation per se while 'X was the only person present at the home of Y on May 1 between the hours of six and nine' would be defamation per quod because it requires knowledge that the murder occurred at that time and place to imply X murdered Y"); D. Dobbs, Law of Remedies § 7.2, at 512–513 (stating libel per quod appl[ies] to a communication that is not defamatory on its face but that is defamatory when coupled with some other extrinsic fact).

4

Defendant argues <u>all</u> statements made in the letter from Beard are opinion and/or are not about her at all.  How can statements made in an official sanction directed at and about Plaintiff be mere opinion or about someone else?  By the time Beard and University make these statements, some of which are absolutely not opinion, as discussed below, they are saying definitively that they are true and accurate.  *See McGarry v. Univ. of San Diego*, 154 Cal.App.4th 97, 112 (2007) (quoting *Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (S.Ct. 1990) and stating "simply couching such statements in terms of opinion does not dispel these [false, defamatory] implications" because a speaker may still imply "a knowledge of facts which lead to the [defamatory] conclusion").  The *McGarry* court goes on to explain "expressions of opinion may imply an assertion of objective fact, and a statement that implies a false assertion of fact, even if couched as an opinion, can be actionable." *Id.*

Using its authority to punish someone based solely on Defendant's written statement moves the statement beyond that of mere opinion and into the realm of declarative assertion of fact.  *See Ruggeroli*, 2024 WL 4203156, *6 (quoting *MacLeod v. Tribune Publ'g , Co.*, 52 Cal.2d 536, 547 (1959) and stating "[w]hether the statement itself or its implication are defamatory is based on their 'probable effect[s] upon the mind of the average reader'").  That Defendant seeks now to say these statements were *just opinions* and *not at all* meant to state outright that Plaintiff was dishonest only proves Plaintiff's Title IX discrimination and retaliation counts, as it is pretext for both.  All statements listed below imply Plaintiff did something wrong and this injured her life irreparably, much like the examples given in *Ilitzky v. Goodman.*  57 Ariz. 216, 220-21 (1941).

Taking each statement one at a time:

(1) "Alexis only communicated via email with you, and the Committee reviewed those emails."  Not only is this a declarative statement of fact that is disproven in the written record, but the record was withheld from Plaintiff until she sued the University. The statement is proven to be a complete lie because Beard and

PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO MOT. TO AMEND SAC

University had these disclosed emails in their purview when they wrote and disseminated this letter, punishing Plaintiff and violating their contract with the federal government to abide by Title IX law.  There is nothing that can change the fact that this statement is a direct declaration, it is false, the falsity was hidden from Plaintiff's view until now, and it is made to imply Plaintiff was dishonest when she was not.  *See McGarry*, 154 Cal.App.4 at 113 (quoting *Milkovich* "whether a reasonable fact finder could conclude the published statement declares or implies a provably false assertion of fact is a question of law for the court to decide [citations], unless the statement is susceptible of both an innocent and a libelous meaning, in which case the jury must decide how the statement was understood").

(2) "You reported to Dean Chalak that you 'reconciled' with Alexis."  This, too, is a declarative statement, and it is false.  Both Plaintiff and Joyce emphatically state this is false, it never occurred, and the University and Beard refused to have Richards appear to be accountable for herself.  Moreover, there is other evidence disproving this statement, namely that Richards engaged Plaintiff in a lengthy discussion about wanting to be present "should a reconciliation occur," something that cannot happen if the reconciliation is in the past.  This statement is made to imply Plaintiff was dishonest, and that is a lie.  Plaintiff never took this stated action and stating it in this letter injures Plaintiff because it is punishing her for something she did not do and advancing a false statement to those who received the letter.  This is a matter for the trier of fact.

(3) "You failed to offer any credible evidence that Alexis said or did anything inappropriate."  This is a lie. The words "failed" and "inappropriate" make this declarative statement false.  Plaintiff cannot fail to provide something when the University and Beard had Plaintiff's email to Joyce removing consent from her role

6

PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO MOT. TO AMEND SAC

in Plaintiff's life, as well they had the documentation of threats and criminal acts of vandalism.  Because Plaintiff's actions were protected activity under Title IX and aligned with University's policies, deeming Joyce's actions inappropriate is both moot and misdirected.  The University and Beard had no legal right to take punitive action against Plaintiff for removing consent in this way.  The statement is a lie based on the evidentiary record and Plaintiff's declarations, and it is made to again injure Plaintiff and pad the lengthy story-like punitive letter.  If not accepted as true now, the court must find this is a matter for the trier of fact and not properly handled at the pleading stage.

(4) ". . . McDonald called you ugly."  This statement is a lie. This is not what I said.

Again, that these statements were made in an official sanction that irreparably damaged Plaintiff's life, her access to her profession, and her standing in her community, it is clear they have every tendency to injure her life.  The nature of the letter and its downstream effects on Plaintiff's life (still occurring now as evidenced in the University's failure to abide by its own agreements) prove and establish special damages.  *See Berger v. Harley Ellis Devereaux*, 2008 WL 10610129, *11 (C.D. Cal.) (stating "[a]t the pleading stage, an allegation that plaintiff has been injured in [her] profession, occupation, or trade is sufficient even if the full extent of [her] damages is not yet ascertainable").  Defendant has received an itemized list of damages, and economic harm caused by these defamation counts is elucidated fully when she states she has suffered damages in the amount of $5,000,000 each from Jarvis and Beard, as well similar amount from University because she has been denied access to her career, which confers a specified range of income, as well as retroactive lost investment in her education.  If the Court finds the current TAC is insufficiently pleaded, she asks permission to correct defects now, obviating future 12(b)(6) motion practice.  *See Morongo*, 893 F.2d at 1079.

As for the Defendant's "of and about" statements, all of them except one contain still unidentified students and with no facts, details, or statements. Plaintiff asks for leave to

PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO MOT. TO AMEND SAC

cure defects in current TAC, and to add left off statements deemed inappropriate for defamation before filing, if needed. *See Morongo*, 893 F.2d at 1079. The University has yet to disclose any proof these statements are true. Moreover, in statement (2), the student mentioned was <u>stalking</u> Plaintiff at the time, as Stephanie Williams stated in her LRW class. The word "professionally" and its implied meaning is addressed by Plaintiff in her email to Richards, and Plaintiff reiterates she doesn't know what happened or who anyone is. In that email, she also reiterates her personal property had been vandalized numerous times. KH000200; KH000202. Nonetheless, Richards offers Title IX protection and support to Plaintiff and thus there is no question all statements made by Beard and University, and all actions taken by Jarvis and laid bare in Defendant's opposition brief are *unlawful retaliation*.

As for McDonald's looking "visibly distressed," this is a subjective and dishonest assertion, refuted even by Jarvis who stated McDonald was "highly agitated." The letter further punishes Plaintiff for McDonald's appearance, something she did not do, he did. He is the person appearing a certain way. But the school is stating *she* did this through the sanction, establishing it is "of and concerning" Plaintiff. *See Mahoney v. Meta Platforms, Inc.*, 710 F.Supp.3d 771, 778 (N.C. Cal. 2024).

Other issues to be explored during litigation are why McDonald was never *accused* of being "distressed" and "highly agitated" while at work. Plaintiff is a college professor and can say if the podium appears distressed or agitated, it is likely their own fault. Bonavia was involved *after Plaintiff said she was going to call the police based on McDonald's behavior towards her*. And nothing proves otherwise. Jarvis made the decision to purposefully disallow proper handling via his repeated false statements. He maliciously exacted Title IX retaliation, as evidenced from his knowledge and direct statements that this was about sexual harassment, at all costs.

McDonald was talking, gesturing, looking angry, obsessing over Plaintiff, insulting Plaintiff, etc. And no one has ever said Plaintiff participated or did anything wrong. It was just lumped into a lengthy letter of what Defendant now asserts is <u>merely opinion and not</u>

PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO MOT. TO AMEND SAC

fact, and that irreparably damaged Plaintiff's life.  This statement and its establishment of elements of defamation is a matter for the trier of fact.  It is not properly dispensed at the pleading stage.

Defendant's statement about Williams is absolutely not true. Plaintiff has stated and is stating emphatically that this never occurred. She relies not only on her own binding statement, but *also* on Williams's own contradictions in her written statement.  For this reason, it is defamatory.

But for Goodno's statement to the school, the event wouldn't have been mentioned in the letter. That Beard carefully chose to describe this event in the letter without quoting her, because the school withheld the video from Plaintiff until now, the video disproves Goodno's report, and the letter implies Plaintiff did what Goodno reported, it is defamatory and tended to injure Plaintiff's life.

### 3.  Count XI Against Jason Jarvis Includes Clearly Malicious Intent If For No Other Reason Than His Statements Are Patently False.

Defamation complaints are subject to Rule 12(b)(6) dismissal due only to "failure to plead extrinsic facts needed to establish" defamation, and Plaintiff has the "right to seek redress and not have courthouse doors closed at the very inception of the action, if the complaint meets the minimal standard necessary to resist dismissal."  CJS LIBEL §226. "A motion to dismiss a defamation complaint admits the truth of all material and relevant facts that are well pleaded and all inferences . . . includ[ing] falsity, publication, and malice." Id.  In California, common interest privilege is conditional and thus Plaintiff need only plead statements were made with malice to survive motion to dismiss.

Further, malice defeating privilege is found when Plaintiff shows the publication was motivated by hate or ill will or by showing defendant lacked reasonable grounds and acted recklessly when publishing.  *Thomsen v. Georgia-Pacific Corrugated, LLC*, 190 F.Supp.3d 959, 975 (E.D. Cal. 2016) (quoting *Noel v. River Hills Wilsons, Inc.*, 113 Cal.App.4th 1363, 1370 (4th Dist. 2003). Jarvis defamed Plaintiff in his numerous emails

9

PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO MOT. TO AMEND SAC

to various University employees.  And because the statements were malicious on their face, they are wholly untrue, vitriolic, bigoted, and show an obsession with Plaintiff and with denying Title IX rights to women, he is not entitled to common interest privilege, and these are not properly invoked at the 12(b)(6) stage anyway.  These defamatory statements are false on their face and also imply Plaintiff was untruthful when she was not.  *See Axelbank v. Rony*, 277 F.2d 314, 317 (9th Cir. 1960) (stating a party's letter suggesting on its face Plaintiff was untruthful was libel per se and was not privileged because it was motivated by malice).

Finally, University and its employees cannot have any interest that subverts Federal law.  The retaliation counts are well-established and there is no room to dismantle the following facts: 1) After enduring abject cruelty and sex-based discrimination in class, Plaintiff emailed University on February 6, 2024 to report and oppose discrimination; 2) Plaintiff suffered adverse action on February 7, 2024 when she was restricted from her education; and 3) the two events are causally connected due both to temporal proximity and through her repeated unmet demands for Defendant to establish a cause other than retaliation.

Thus, Court should grant Plaintiff leave to amend because this issue is not properly disposed of at the pleading stage and she is likely to succeed on the merits down the road.

### C. Courts Find School Employees Liable For Defamation For Spreading Lies And Other Inflammatory Statements While Conducting Sex Discrimination Investigations.

While most of the case is not published, a jury recently awarded a woman $1.5 million, one-third of which was to be paid by the school Superintendent for his role in spreading malicious statements and rumors while he investigated her claims of sex-based discrimination.  *McAndie v. Sequim Sch. Dist.*, 3:21-cv-05227-JHC (W.D. Wash. Mar. 3, 2023).  In *McAndie*, the school failed to properly handle the woman's reports of sex-based harassment and discrimination from a Principal, the Superintendent retaliated by inserting

10

PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO MOT. TO AMEND SAC

false statements about her while he was investigating her claims, all of the Superintendent's false statements were made to other school employees during the course of his job duties, and all maintained the same level of privilege as Jarvis and Beard.  This informs the Court of its tendency to hold school officials liable for their damaging actions, both jointly and severally with their employers. Although she maintains the proposed TAC already allows for this wiggle room, if it cures a defect, Plaintiff is happy to change verbiage in the named parties section to allow for the University to ultimately provide the remedy determined. *Morongo*, 893 F.2d at 1079.

### D. Adding Jarvis And Beard Is Not Retaliation Or Harassment.

Plaintiff attempted to engage in meet and confers per Local Rule 7-3, and she was rebuffed.  Noncompliance with the local rules is cause enough to allow amendment. Defendant had every opportunity to "fully discuss" the legal issues that would have obviated the need for motion practice, as L.R. 7-3 and Judge's Orders demand, and it opted not to do so.  Plaintiff's Ex Parte Application was a coincidental response to the school's obfuscation (not, as Defendant falsely states in its opposition brief, because she has failed to meet requirements).  Defendant further seeks to have the Court adopt "off-the-books" punishments similar to its own ol' school discriminatory reckonings without citing a statute, rule, or caselaw allowing establishment of retaliation and harassment in this circumstance.

In contrast, Congress does provide remedies when Universities and individuals violate Title IX, State civil rights laws, and State tort laws.  20 U.S.C. § 1681; Cal. Educ. Code § 66270; Cal. Civ. Code § 51.7; Cal. Civ. Code § 52.1; Cal. Civ. Code § 46.  There is no way one can read the content of the email record and review the facts, not the promise of unsubstantiated, anonymous sources and irrational interpretations of cited caselaw, and conclude that Plaintiff harbors petty ill will towards anyone, including the new named parties.  Plaintiff paid no attention whatsoever to Jarvis or Beard until they damaged her life in violation of several laws.  She has a right to restoration and to be heard by the Court

11

PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO MOT. TO AMEND SAC

and jury, and as soon as this matter is settled, it will be her pleasure to never again think of either of them.

## III.   Conclusion

The Court should grant Plaintiff leave to amend her Second Amended Complaint because she acted as soon as it was feasible, her well-pleaded complaint is not subject to dismissal at the pleading stage, she is likely to succeed on the merits, courts find employees liable jointly and severally, and Defendant violated local rules. Should defects appear in current TAC, Plaintiff asks to for leave to cure before filing. For these reasons, Plaintiff respectfully requests the Court grant her leave to amend her Second Amended Complaint.

DATED: January 26, 2025

By:   /s/Kira Howell

Kira Howell

Plaintiff in Pro Per

12

PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO MOT. TO AMEND SAC

**Certificate Of Compliance**

**The undersigned, for herself, certifies that this brief contains 4000 words, which
complies with the word limit of Court's Standing Order For Newly Assigned Civil
Cases dated April 16, 2024.**

DATED:        January 26, 2025

By: /s/ Kira Howell

Kira Howell

Plaintiff In Pro per

13

PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO MOT. TO AMEND SAC

**PROOF OF SERVICE**

I, Kira Howell, declare I served the foregoing documents described as:

**Reply To Defendant's Opposition To Plaintiff's Motion for Leave To Amend Her Second Amended Complaint**

**Declaration ISO Plaintiff's Reply To Defendant's Opposition To Her Motion For Leave To Amend The Second Amended Complaint**

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 26, 2025 at Los Angeles, CA.

By:    /s/ Kira Howell

Kira Howell

Plaintiff In Pro Per

14

PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO MOT. TO AMEND SAC