# KIRA HOWELL



April 2, 2025

Honorable Rozella A. Oliver
United States Courthouse
255 E. Temple St.
Los Angeles, CA 90012

Re: 2:24-cv-06332-WLH-RAO; Letter Brief Requesting Production of Employment Files, Student Disciplinary Hearing Documents, Title IX Documents (RFP Nos. 9, 10, 17, 18, 20, 28, 34, 35, 36, 39, 40, 43, 47, 48, 49, and 53)

Dear Clerk Ramirez,

This letter complies with the Court's Order dated March 19, 2025 seeking letter briefing on all unresolved discovery requests seeking production of documents pertaining to employment records, including anonymous course evaluations, records of Title IX investigations, and records of student discipline.

Procedural Background
Plaintiff sued on July 24, 2024. Dkt. No. 1. Defendant filed its Answer on October 29, 2024. Dkt. No. 37. Plaintiff filed Third Amended Complaint, adding Jason Jarvis and Sharon Beard as Defendants. Dkt. Nos. 71 (February 14, 2025). Defendants filed Motion to Dismiss Count X. Dkt. No. 76 (February 28, 2025). Plaintiff filed Fourth Amended Complaint. Dkt No. 79 (March 3, 2025). Parties attended Informal Discovery Conference. Dkt. No. 87 (March 19, 2025).

Facts
Plaintiff matriculated at Pepperdine Caruso School of Law ("CSOL") in Summer 2023. During Summer Orientation, Chalak Richards made discriminatory statements and jokes about Plaintiff being "still in school [at her age]" and attacking her for not being the appropriate race. During the Summer term, she attended several classes with Michael Moss. In July 2023, Moss approached Plaintiff and said someone was outside killing all of the snails on campus. The next day, Plaintiff saw dozens of smooshed snails on the walkway form the parking lot. Moss later appeared dejected and brooding in class as Plaintiff sat talking with another male student. Moss asked to be included more. Moss repeatedly followed Plaintiff outside to her car, courted her in strange ways, made pressured sexual comments, made numerous inappropriate sexual comments and gestures towards Plaintiff and other women, and got angry when Plaintiff appeared to call him "weird" as he was acting sexually harassing.

On July 19, 2024, Plaintiff was contacted by Title IX Coordinator, LaShonda Coleman, to offer support for Moss's alleged sexual harassment lasting for months. During the same week, Jason Jarvis met with Moss and Moss told the school he was so emotionally unstable that he wanted to

1

abandon his entire professional life and wanted to see a counselor after what sounds like a momentary interaction with Plaintiff where he felt rejected. Plaintiff is unsure what occurred and is still seeking discovery expounding on this and other disturbing interactions with Moss. Jarvis began emailing University employees calling Plaintiff names and discrediting her. He continued this campaign of hate against her until her withdrawal in February 2025. Emails reveal Moss was dishonest in his accounts of his interactions with Plaintiff, leaving out his comments about murdering snails, being called "weird," kicking at her and the ground, courting her repeatedly, making inappropriate sexual comments, and violating a stay away order requiring he not interact with her.

During Orientation Week, Richards attacked Plaintiff publicly in class by jumping at her in her seat, making homophobic gestures at her, and saying to the class, "so we'll guess what you are." Career Development Office Director, Alexis Joyce, filled in for another faculty member at Plaintiff's Orientation table. Joyce and Plaintiff engaged in conversation for several minutes and Plaintiff followed up in her office. Joyce pointed at Plaintiff and said, "that's weird . . . I heard" and then later denied she did this after Plaintiff emailed her to stop participating in an ongoing public attack focusing on sexual orientation defamation and retaliation for reporting Moss. Plaintiff's Criminal Law textbook was defaced on three occasions (August 30, 2023; September 26, 2023; and October 2023). Plaintiff reported this to Jarvis and Richards, and Title IX contacted Plaintiff on October 21, 2023 offering support.

On August 30, 2023, Plaintiff reported a male student made a gun and pointed it at her head during a Contracts class after seeing Tom Stipanowich and other faculty and leaders make repeated guns with their hands along with anti-LGBT+ sentiments. Jarvis escalated his private discrimination and retaliation against Plaintiff after hearing of reports of these events.

On October 4, 2023, days after Plaintiff reported criminal vandalism of her personal property and after removing consent from Joyce over any access to professional decisions in Plaintiff's life, and in the context of being antagonized for being sympathetic to the LGBT+ community, Richards and Jarvis emailed each other plotting to retaliate against Plaintiff by punishing her for searching for a job. This fact was disclosed to Plaintiff today, April 2, 2025. In other disclosures today, Jarvis is read in emails referring to other students as colleagues and equals while disparaging Plaintiff in every instance. Even though Plaintiff was the factual victim of serial misdemeanor vandalism and public threats, Jarvis disparages Plaintiff in every email, even when discussing her protected opposition to sex-based discrimination. Additionally, new evidence disclosed today shows another faculty member confirming reports of a male exam proctor's "harsh" and "rude" behavior, a fact that was withheld until now and exculpates Plaintiff, supporting her claims of Defamation and Title IX Retaliation. Jarvis is also read in emails alluding to Plaintiff not having autonomy over her perspective as a woman when reporting harassment, stating other females must also feel the same way in order for it to be valid.

On February 7, 2024, Plaintiff engaged in protected activity under Title IX when she emailed Barry McDonald telling him to stop making disparaging comments about her in class after he spent lecture time staring at her and then joking that she was "old" to a group of male students. McDonald also was seen waiting outside Plaintiff's other classes on multiple occasions, and he emailed Sharon Beard lying about his actions in class, saying he "has no idea" what she is talking

about. On the same day, Jarvis sent an email defaming Plaintiff by stating she defaced her own textbook and she has "dementia."  In new disclosures, Jarvis is also read discrediting her reports to a faculty who supported her reports by saying she "weird[ly]" did this to herself in apparent retaliation for her reporting Moss and McDonald.  Jarvis is also read mirroring Moss's language and reiterating his undisclosed lies as if Moss was credible and a peer.

Sharon Beard and Jarvis emailed each other dishonest accounts of their interactions with Plaintiff regarding an email with another faculty who supported her.  Both Beard and Jarvis are on the newly disclosed record stating misdemeanor crimes are irrelevant to the University and the focus should be on punishing Plaintiff for reporting sexual harassment.  Beard then emailed Jarvis after drafting and sending the defamatory letter about Plaintiff thanking him for his "encouragement" while joking Plaintiff had "already appealed" and stating she "will ask someone who has done one of these before" to handle it for the University.  Jarvis then responded to Beard asking when Plaintiff's appeal would be officially "exhausted."  He is then on the email record hoping to email Plaintiff once more in retaliation and showing excitement.

 Defendants retaliated by restricting Plaintiff's access to her education hours after she reported and opposed McDonald's actions.  No facts, details, evidence, or witnesses were provided when deciding to do so, and it was not until Plaintiff sued that she gained access to evidence showing Jarvis had defamed her and was instrumental in retaliating against her and advancing untrue rumors about her without her ever being apprised.  He even stated in one email that Plaintiff would surely be "surprised" at the school's actions.

Legal Standards
Rule 26(b)(1) states in relevant part that the scope of discovery includes any information that is "relevant to [a] party's claim . . . and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).  Rule 26(b)(1) also considers the "importance of the issues at stake in the action, the amount in controversy, the parties' access to relevant information, the parties' resources, the importance of the discovery in resolving the issues" when determining discovery scope.  Id.  Courts must determine if the information sought will more likely than not provide a benefit to the requesting party without regard for ultimate admissibility at trial.  Id.

Analysis

    A.  Employment Records (RFP Nos. 9, 10, 17, 18, 28, 34, 35, 36, 39, 40, 43, 47, 49, and 53) And Anonymous Course Evaluations for Jason Jarvis And Betty Snyder (RFP Nos. 20, 48)

The Court should compel production of requested employment records and anonymous course evaluations because they are relevant and necessary to establish Pepperdine's pattern and practice of indifference to discrimination via retaliation and defamation.  Title IX retaliation cases are modeled after Title VII employment discrimination matters. *See, e.g., Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 616 (S.Ct. 1999); *Emeldi v. Univ. of Oregon*, 698 F.3d 715, 725 (9th Cir. 2012) (citing Congressional intent to create similar substantive standards for Title IX and Title VII, and holding the prima facie elements for Title VII Retaliation are the same under Title IX).  Similarly, caselaw supporting production of documents in Title VII matters holds for Title IX matters as well.

    1. Employment records of employees involved in Plaintiff's claims may establish Defendants' pattern and practice of violating Title IX.

Courts find that employment records are relevant in establishing "pattern and practice" and discerning the inner motivations of parties in discrimination suits. *Lauer v. Longevity Medical Clinic*, *PLLC*, 2015 WL 5471983, *4 (W.D. Wash. 2014). Further, Courts hold "[i]n recognition of the insidiousness of discrimination," evidence showing a plaintiff "'was treated differently . . . because he complained' is relevant and discoverable." *Id.* Here, Defendants have denied production of anonymous course evaluations and all employment records except proof of attendance at an annual Title IX training event. See Defendant Responses to RFP Nos. 9, 10, 17, 34, 36, 43, 47, and 49.

A common objection to production is that documents are "not relevant to the subject matter and not proportional to the needs of the case." Id. District Courts in the Ninth Circuit find that "entire personnel files of [even] non-parties may be discoverable," and Defendants are not entitled to "pick and choose what parts of the personnel files they think are relevant to Plaintiff, to limit discovery to only those portions of the files that contain complaints or discipline related to discrimination, or to select the parts of the files that they think are 'reasonably likely' to yield admissible evidence." *Longevity Medical Clinic*, 2015 WL 5471983 at *4. The Plaintiff in *Longevity Medical Clinic* suffered adverse employment action and then sought employment records to establish pretext for discrimination, including advancing a theory that sought records may help her show another person's intent and culpability. *Id.* The Court agreed with her and compelled production, finding the potential for uncovering bias of both named parties and witnesses, as well as establishment of pretext outweighed any privacy concerns advanced by the Defendants. *Id.* (citing *U.S. v. Abel*, 469 U.S. 45, 51 (S.Ct. 1984)).

Plaintiff's sought relief includes injunctive relief, implementation of lawful Title IX practices, and declaration that her civil rights have been violated. Dkt. No. 79, p. 55. Any documents offering insight into employment decisions of those who retaliated against Plaintiff or participated in indifference to discrimination are relevant and proportional, especially given the current evidentiary record showing Jarvis's tendency to attack female students who report or oppose sexual harassment and his desire to exact retaliatory revenge should any female student report a faculty member's misconduct.

Except in instances where the faculty member exhibited a longstanding, directly discriminatory behavioral pattern towards Plaintiff, or where their conduct is relevant to Plaintiff's sought relief, Plaintiff has already limited production to only those records relevant to discrimination or student feedback. Employment records of leaders participating in conduct that indoctrinates the University community to disregard Federal laws are vital to justifying Plaintiff's sought relief, which includes injunctive relief, implementation of proper Title IX protocols, and declaration that Plaintiff's civil rights have been violated.

 For administrators who are cited as having directly targeted Plaintiff disparately and/or having direct influence in her adverse educational outcomes, it is clear the Court supports broad disclosure of employment records. *Id.* Further, Plaintiff stipulates that all employment records not

encompassing Title IX investigations or student course evaluations can be held under protective order, thus eliminating any concern of inadmissibility or undue embarrassment. *Id.* at *7 (finding "while the Court is cognizant of the sensitive contents of these files, the Court is confident that the parties' Protective Order [] will be sufficient to shield these employees from any public disclosure"). Should the Court deem all requested records be properly held under protective order even before pretrial motions *in limine*, Plaintiff also happily seeks production in this manner.

2. Per Defendants, anonymous course evaluations are employment records and thus may also relevantly establish elements of retaliation and defamation.

The Court should compel production of anonymous course evaluations for Betty Snyder, Jason Jarvis, Tom Stipanowich, Barry McDonald, Stephanie Blondell, Stephanie Williams, and Jeff Baker because they are employment records, per Defendants' own admission and argument, and they can thus establish a "pattern and practice" of indifference and hostility towards students who report discrimination. See RFP Nos. 9, 10, 17, 20, 34, 36, 48, and 49.

Further, anonymous course evaluations are designed to be critical of the faculty while protecting the *student* from fear of retaliation for providing honest feedback. Defendants here have attempted to reverse this logic by denying production of evaluations due to the *faculty*'s privacy rights and the *faculty*'s purported right to respond to criticism privately. Pepperdine's demands that faculty not ever be criticized publicly, and that its faculty be shielded from any student feedback, goes against the industry standard promoting freedom of thought and expression, as well as full accountability commensurate with tenured and esteemed positions. There is no reasonable privacy expectation for the faculty when reviewing anonymous course evaluations and the school should maintain no interest in protecting a faculty member who has been criticized by a student. Accountability assumes a faculty member embraces criticism freely and is able to respond to it openly and professionally.

If the evidence shows the University allows disparagement of or retaliation against students who report, and if it shows the students' identities were revealed even after ensuring their anonymity for participation in the evaluation program, this is relevant to Plaintiff's claims of retaliation and defamation of her character and person simply because she opposed a male student's sexual harassment, criticized faculty's unprofessional conduct, and reported violations of American Bar Association standards.

Plaintiff submitted an anonymous course evaluation for Betty Snyder, and Defendants then appear to vehemently defame and discredit her for months behind her back. Snyder, Jarvis, and others maintained personal relationships with Moss, an admittedly emotionally unstable male student who sexually harassed Plaintiff and lied about it privately to them. Access to these evaluations and all documentation discussing them is thus pertinent to establishing pretext for retaliation and perhaps to showing defamatory intent. Jarvis made numerous public references to Plaintiff's anonymous course evaluation of Betty Snyder. Taken with the evidence showing he factually defamed and targeted her for months based solely on a sexually-harassing male student's lies and in apparent retaliation for her criticism of Snyder, it is clear Plaintiff has a right to discover documents showing the school's historical response to criticism. It is also relevant to examine the extent of Jarvis's authority at CSOL, as well as the extent the University abides by its contract with

5

the Federal government when monitoring its employees, if it maintains employment standards at all.

Further, central to the claims in this case are the named faculty members' dishonesty and unlawful or unprofessional conduct. Plaintiff was publicly discriminated against during mandatory lectures for months. See, generally, Fourth Amended Complaint. When she reported or opposed this discrimination, Defendants punished her unlawfully. Defendants also relied on other students' own acceptance of sexual harassment and discrimination as a means of creating a network or achieving success. As such, access to how other students perceive faculty, how the school has historically responded to negative feedback, if any, and how Defendants responded to Plaintiff's feedback in the context of defaming her in retaliation for opposing sex-based discrimination, are all relevant.

   3. Student course evaluations and any employment records are not shielded by FERPA.

The Court should compel production of employment records and course evaluations because Defendants' objections under the Family Educational Rights and Privacy Act (FERPA) are not valid. FERPA protects students' privacy rights and thus prevents disclosure of educational records without prior consent. 20 U.S.C. § 1232(g). However, FERPA protects only identifiable records and it is also not absolute. Plaintiff seeks anonymous course evaluations, evidence of student discipline, and documentation of Title IX investigations that can easily be redacted. These requests are essential to establishing pretext for retaliation and defamation. As such, there is no valid FERPA issue and production of documents should be compelled, even if under protective order.

Specifically, Plaintiff seeks the full identity and records pertaining to Blanche Doe, a student who volunteered to sit on the Student Disciplinary Committee. See Defendant Response to RFP 35. FERPA protects a student's own records and Doe not only waived her right to privacy when she volunteered, but she maintains no privacy right here. Doe was personally flirtatious and friendly with Moss and other males, and her conduct in class conflicts with her role as an arbiter of justice over matters involving faculty sexual harassment.

For these reasons, the Court should overrule all objections citing FERPA as the basis for denying production.

   B. Documentation of Discrimination and Student Disciplinary Committee Hearings (RFP Nos. 24-27 and 38)

The Court should compel production of all documentary evidence from previous Title IX discrimination investigations and complaints, as well as all Student Disciplinary Committee hearings from 2018 to present because they establish both retaliatory pattern and practice and pretext for retaliation and defamation. See, e.g., *Heyne v. Caruso*, 69 F.3d 1475, 1480 (9th Cir. 1995) (holding evidence of other sexual harassment was relevant to disproving Defendant's defense and to showing pretext); *Jackson v. Montgomery Ward & Co., Inc.*, 173 F.R.D. 524 (D. Nevada 1997) (citing *Estes v. Dick Smith Ford Inc.*, 164 F.R.D. 62, 70 (E.D. Mo. 1995) and granting motion to compel in part because a plaintiff bears undue difficulty proving discrimination via direct evidence of an employer's motives when taking adverse action because "[d]efendants of

even minimal sophistication will neither admit discriminatory animus nor leave a paper trail demonstrating it").

Plaintiff is seeking documents to aid in establishing disparate treatment towards her and based on a defamatory motive. Every time Plaintiff told Defendant to stop discriminating against her publicly in class, she was secretly called derogatory and defamatory names. Each time she exercised her statutory rights, Defendants discredited her immediately and sought to retaliate against her at all costs.

Conclusion

For the foregoing reasons, the Court should compel production of all requested employment records, including anonymous course evaluations, as well as all records of reports and investigations into Title IX discrimination and student discipline.

Sincerely,

Kira Howell